**Modesta Campos HAUSMAN, Appellant,**

v.

**Stephen HAUSMAN, Appellee.**

No. 04–04–00707–CV.

Court of Appeals of Texas, San Antonio.

May 17, 2006.

40

Jeff Small, Law Office of Jeff Small, San Antonio, for appellant.

D. Channing Bradshaw, Bradshaw & Bradshaw, P.L.L.C., Friendswood, Roger R. Orsinger, McCurley, Orsinger, McCurley, Nelson & Downing L.L.P., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice, concurring in result only, REBECCA SIMMONS, Justice.

**OPINION**

Opinion by REBECCA SIMMONS, Justice.

Modesta Campos Hausman appeals the trial court's order finding that Stephen Hausman was not the biological father of D.J.H. but that Modesta was equitably

estopped from denying Stephen's parentage. Modesta contends that the trial court erred in granting relief contrary to sections 160.608 and 160.631 of the Texas Family Code or, in the alternative, the evidence was insufficient to establish the elements of equitable estoppel. We affirm the trial court's order.

## BACKGROUND

D.J.H. was conceived and born during Modesta and Stephen's marriage. Modesta filed for divorce when D.J.H. was approximately two years old. During the pendency of the divorce proceeding, Stephen obtained a paternity test because he heard rumors that another man was claiming to be D.J.H.'s father. Despite the fact that the paternity testing revealed that another man was D.J.H.'s father,[1] Stephen sought to be named joint managing conservator of D.J.H. After a hearing to determine parentage, the trial court entered findings of fact and conclusions of law.

The trial court found that Stephen was not D.J.H.'s biological father. The trial court further found that Modesta was equitably estopped from denying Stephen's paternity. The trial court found that a parent-child relationship is established between Stephen and D.J.H. for all purposes. After the trial court entered its order, a jury trial was held with regard to custody. Stephen and Modesta were named joint managing conservators, with Stephen having the exclusive right to determine D.J.H.'s primary residence. After the jury trial, the trial court entered a final decree of divorce, and Modesta appealed.

## STANDARD OF REVIEW

The trial court entered findings of fact and conclusions of law regarding Stephen's paternity. Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same well-established standards applied in reviewing the sufficiency of the evidence supporting a jury's finding. *Id.* Under a sufficiency analysis, we do not serve as a fact finder, pass upon the credibility of witnesses, or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003); *Wal–Mart Stores, Inc. v. Garcia,* 30 S.W.3d 19, 21 (Tex.App.-San Antonio 2000, no pet.). Appellate courts review a trial court's conclusions of law as a legal question. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002).

## SECTIONS 160.608 AND 160.631

In her first issue, Modesta asserts that under section 160.608 of the Texas Family Code, the only relief the trial court could grant based on its finding of equitable estoppel was to deny an order for genetic testing.[2] Section 160.608 permits a trial court to deny a motion for an order for genetic testing if the court determines that the conduct of the mother or

1. The trial court subsequently ordered additional paternity testing to ensure that the results of the testing obtained by Stephen were accurate.

2. Modesta's first issue states, "Stephen Hausman voluntarily sought DNA testing of himself and [D.J.H.] in late 2003 well before the paternity hearing at issue here. Thus, there was no motion for genetic testing before the court at the paternity hearing. Did the trial court exceed its authority by granting relief other than that authorized in the Family Code section 160.608—denying an order for genetic denying [sic]?"

presumed father estops that party from denying parentage and it would be inequitable to disprove the father-child relationship.[3] TEX. FAM.CODE ANN. § 160.608(a) (Vernon Supp.2005). The only trial court action that section 160.608 addresses is whether the trial court can deny a motion requesting genetic testing. Section 160.608 does not address the trial court's authority regarding orders determining parentage.

■■■ Modesta appears to be arguing that since section 160.608 codified "paternity by estoppel," the trial court is without authority to find estoppel under other circumstances. In this case, the trial court found that Stephen was not the biological father of D.J.H. but further found that Modesta was equitably estopped from denying Stephen's paternity. The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other. *Johnson v. Cherry*, 726 S.W.2d 4, 8 (Tex. 1987); *Warren v. Osborne*, 154 S.W.2d 944, 946 (Tex.Civ.App.-Texarkana 1941, writ ref'd w.o.m.). A trial court can apply equitable principles to estop a defendant from relying on an otherwise applicable statutory bar to recovery. *See Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996) (noting fraudulent concealment resembles equitable estoppel and estops a defendant from rely-

ing on a statutory limitations provision to otherwise preclude recovery). In applying the doctrine of equitable estoppel in a recent case, the El Paso court explained,

The application of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child. Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father [he] has known all [his] life is not in fact [his] father. In determining whether the doctrine should be applied to a particular case, the child's best interests are of paramount concern. To that end, the courts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship.

*In re Shockley*, 123 S.W.3d 642, 651–53 (Tex.App.-El Paso 2003, no pet.) (citations omitted). Although the theory of paternity by estoppel or equitable estoppel also is the theory that underlies section 160.608, *see id.* at 652 n. 7, nothing in section 160.608 or any other provision of the Code appears to broadly divest a trial court of its authority to apply the principles of equitable estoppel in paternity cases.

■■■ Modesta's second issue fails for a similar reason.[4] Modesta asserts that un-

---

**3.** Section 160.608(a) provides, "In a proceeding to adjudicate parentage, a court may deny a motion for an order for the genetic testing of the mother, the child, and the presumed father if the court determines that: (1) the conduct of the mother or the presumed father estops that party from denying parentage; and (2) it would be inequitable to disprove the father-child relationship between the child

and the presumed father." TEX. FAM.CODE ANN. § 160.608(a) (Vernon Supp.2005).

**4.** In her second issue, Modesta states, "Family Code section 160.631 directs that parentage determinations are to be made in accordance with its terms. Section 160.631 mandates that a man excluded as the father of a child by genetic testing be adjudicated as "not the

der section 160.631(d) of the Code, the trial court was required to adjudicate Stephen as not being the father of the child.[5] In this case, the trial court did adjudicate Stephen as not being the biological father of D.J.H. The trial court's order establishing a parent-child relationship between Stephen and D.J.H. was based on its equitable jurisdiction or authority to find that Modesta was estopped from denying Stephen's paternity. *See Slaughter v. Cities Service Oil Co.*, 660 S.W.2d 860, 862 n. * (Tex.App.-Amarillo 1983, no writ) (noting equitable principles are designed to alleviate harsh results caused by rigid application of legal principles).

## EQUITABLE ESTOPPEL

■ Having found no statutory basis to preclude the application of equitable estoppel in this case, we now turn to Modesta's contention that the evidence is insufficient to support the trial court's equitable estoppel finding. In her argument, Modesta contends that Stephen had the burden to establish equitable estoppel by clear and convincing evidence because section 160.608(d) sets forth a clear and convincing standard that must be met when a trial court denies genetic testing. Section 160.608(d) provides, "A denial of a motion for an order for genetic testing must be based on clear and convincing evidence." TEX. FAM.CODE ANN. § 160.608(d) (Vernon Supp.2004–2005). Nothing in section 160.608(d) requires a heightened burden to be applied when a trial court is exercising its equitable jurisdiction to determine whether a mother is estopped from denying a presumed father's paternity.

■ Equitable estoppel may arise if five factors are satisfied: (1) there was a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) to a party without knowledge, or the means of knowledge, of those facts; (4) with the intention that it be acted upon; and (5) the party to whom it was made must have relied on the misrepresentation to his prejudice. *In re Shockley*, 123 S.W.3d at 653.

Stephen testified that Modesta never discussed with him the possibility of him not being D.J.H.'s father. Modesta represented to Stephen that he was the father by engaging him in her prenatal care and by keeping a baby picture of Stephen beside D.J.H.'s picture and frequently commenting on the similarity in their appearances. Modesta referred to Stephen as "daddy" in the presence of D.J.H. and others. Modesta admitted that she represented that Stephen was D.J.H.'s father because she believed it was true. Modesta admitted that she engaged in sexual relations with another man and that she did not use a contraceptive each time she had relations with him. Modesta testified that her menstrual cycle was irregular, but stated that it was not logical to her that the man with whom she engaged in sexual relations could have fathered D.J.H. Modesta admitted that she did not tell Stephen about those relations. Modesta stated that the relations occurred during a period in which she and Stephen were separated; however, Stephen could not recall a period of separation. From the foregoing testimony, the trial court could have

father" of that child. Did the trial court err by establishing a parent-child relationship between Stephen Hausman and [D.J.H.] despite its finding by clear and convincing evidence that Stephen was not [D.J.H.]'s father?"

5. Section 160.631(d) provides, "Unless the results of genetic testing are admitted to rebut other results of genetic testing, a man excluded as the father of a child by genetic testing shall be adjudicated as not being the father of the child." TEX. FAM.CODE ANN. § 160.631(d) (Vernon 2002).

concluded that Modesta represented to Stephen that he was D.J.H.'s father while concealing the material fact that she had unprotected relations with a man during the time frame in which she became pregnant.

Marisol Olivares testified that Modesta had mentioned a few times that D.J.H. was not Stephen's child before she filed for divorce. Olivares initially testified that Modesta mentioned "or kind of like bragg[ed]" that D.J.H. was not Stephen's child. Olivares later stated that Modesta would frequently joke that she was not completely sure who was D.J.H.'s father. Modesta denied making the statements to Olivares but stated that she had thrown Olivares out of an apartment complex for engaging in indecent behavior. Olivares denied the incident. The trial court as the fact finder was required to evaluate Olivares's credibility, and her testimony supports a finding that Modesta knew that Stephen was not D.J.H.'s father. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761 (appellate court does not pass upon the credibility of witnesses or substitute its judgement for fact finder where evidence is conflicting); *Wal–Mart Stores, Inc.*, 30 S.W.3d at 21. Even if we were to conclude that Olivares's testimony was insufficient to support a finding that Modesta knew that Stephen was not D.J.H.'s father, Modesta admitted that she had sexual relations with another man, and Olivares's testimony established that Modesta knew that the other man was possibly D.J.H.'s father. Accordingly, Modesta knowingly concealed from Stephen the fact that she had sexual relations with another man who possibly was D.J.H.'s father.

Modesta testified that Stephen asked her "Are you pregnant, or are we pregnant?" Modesta stated that she responded, "I know that I'm pregnant. I don't know about you." Modesta's sister testified that when she congratulated Stephen on Modesta's pregnancy, he responded, "Not too fast. How do you know it's my child? I don't even know if he's mine." Stephen denied making either statement and stated he had no knowledge that Modesta had engaged in relations with another man or that D.J.H. was possibly another man's son. The trial court evaluated the credibility of the witnesses, and Stephen's testimony is sufficient to support a finding that he was without knowledge. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761 (appellate court does not pass upon the credibility of witnesses or substitute its judgement for fact finder where evidence is conflicting); *Wal–Mart Stores, Inc.*, 30 S.W.3d at 21. Modesta contends that Stephen had the means to obtain knowledge through a paternity test. However, because Modesta concealed her sexual relationship with another man, Stephen would have no means to obtain knowledge that another man could possibly be D.J.H.'s father and would have no reason to seek a paternity test.

From Modesta's actions encouraging Stephen to participate in D.J.H.'s life as his "daddy," the trial court could have inferred that Modesta intended for Stephen to rely on her representations and concealment of material facts. Finally, through his actions in attending prenatal care, paying for medical care, and caring for Stephen as his son, Stephen relied on Modesta's representations and concealment of material facts.

The evidence is legally and factually sufficient to support the trial court's finding that Modesta is equitable estopped to deny that Stephen is D.J.H.'s father.

### Conclusion

The trial court's judgment is affirmed.