Opinion issued March 20, 2008









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00875-CV






MICHELLE STAMPER, F/K/A MICHELLE KNOX, Appellant


V.


STANLEY KEITH KNOX, Appellee






On Appeal from the 306th District Court

Galveston County, Texas

Trial Court Cause No. 01FD1970






O P I N I O N

 Appellant, Michelle Stamper, formerly known as Michelle Knox, appeals the
trial court's order finding that appellee, Stanley Keith Knox, was not the biological
father of K.R.K. but that Stamper was equitably estopped from denying Knox's
parentage. In two issues, Stamper contends that (1) Knox did not prove through clear
and convincing evidence that he should be adjudicated K.R.K.'s father on equitable
grounds and that (2) the trial court abused its discretion by refusing to consider
K.R.K.'s best interest when determining whether Knox should be adjudicated as
K.R.K.'s father on equitable grounds.

 We reverse and render.

Background

 Stamper and Knox were married in June 1998. In October 1998, Stamper had
a brief sexual relationship with Jason Christopher Taylor, and she was also having
sexual relations with Knox. K.R.K. was born on June 20, 1999. At the time of
K.R.K.'s birth, Stamper and Knox were still married, and both believed K.R.K. was
Knox's child. In September 2001, Knox filed a petition for divorce seeking custody
of K.R.K., and Stamper and Knox ceased living together as husband and wife. The
trial court issued a standard temporary custody order naming Stamper and Knox joint
managing conservators of K.R.K. with standard rights of possession.

 Shortly after he petitioned for divorce, Knox received an anonymous phone call
informing him that K.R.K. might not be his child. He had genetic testing conducted
which revealed that he was not K.R.K.'s biological father, and he informed Stamper
of that fact through his attorney. Stamper and Taylor then had another genetic test
conducted which confirmed that Taylor was K.R.K.'s biological father. Although
Taylor initially petitioned to establish himself as K.R.K.'s father and signed an
admission of paternity, he later signed an affidavit of relinquishment of parental
rights in June 2002 and filed a motion for nonsuit.

 In August 2002, K.R.K. made an outcry of sexual abuse to Stamper, naming
Knox as the abuser. Stamper filed a motion for additional temporary orders asking
the trial court to deny Knox access to K.R.K. In support of her motion, Stamper
offered the supporting affidavit of a social worker who had worked with K.R.K. and
had heard K.R.K.'s claims of abuse, as well as evidence from medical professionals. 
 A pre-trial conference was held on October 24, 2003. During the conference,
the trial ordered a psychological evaluation of the parties. In March 2004, the court-ordered psychological evaluation of Stamper, Knox and K.R.K. was completed. The
examiner, Mary Alvarez, Ph.D., found that K.R.K.'s behaviors and allegations were
consistent with the abuse K.R.K. had alleged because K.R.K.'s allegations had been
consistent over time and were accompanied by other behaviors that were
uncharacteristic for her but were not surprising for victims of abuse. Alvarez found
it unlikely that K.R.K. was making up the allegations of abuse or that Stamper had
"coached" K.R.K. into accusing Knox. Alvarez also found that Knox's evaluation
results were "extremely concerning because [he] meets the psychodiagnostic criteria
to be considered a psychopath (i.e., sociopath)." Alvarez characterized this as a
"severe personality disorder and behavioral disorder" with a poor long-term
prognosis. Alvarez also reported that Knox showed indications of suffering from
bipolar disorder. She concluded that there was significant evidence to support her
recommendation that K.R.K. have only supervised contact with Knox and that "[d]ue
to the extreme degree of Mr. Knox's psychopathology, the only safe place for
[K.R.K.] to have any contact with Mr. Knox is at a structured supervisory facility that
employs individuals capable of high levels of supervision, who are familiar with
psychopathic individuals."

 Stamper and K.R.K. subsequently moved to Harris County, Texas, where
Stamper sought a protective order against Knox. In March 2006, the 311th Judicial
District Court of Harris County (the Houston court) issued a protective order in favor
of Stamper and K.R.K. The Houston court found that Knox had committed family
violence and that family violence was likely to occur in the future so that a protective
order was in the best interest of Stamper and K.R.K. and necessary for their welfare
and safety. The Houston court's order prohibited Knox from having contact with
K.R.K. The Houston court eventually extended the order to remain in force until
2009. The evidence in support of the protective order showed that Knox had sexually
abused K.R.K. This evidence included a medical exam conducted in July 2002, as
well as the affidavit of Jana Kixmiller, LCSW, a counselor and Vice President of
Children and Family Services for LifeSpring Mental Health Services in Jeffersonville,
Indiana, who had seen K.R.K. in 11 therapy sessions from March through June 2003. 
The affidavit stated, "[K.R.K.] has expressed during therapy sessions that she does
not feel 'safe' with her 'daddy,'" and it detailed K.R.K.'s allegations of sexual abuse
by Knox. The evidence also showed that Dr. David McCormick, Professor of
Pediatrics at University of Texas Medical Branch, stated, "Please be informed that
[K.R.K.] has significant behavioral regression after she visits her father."

 On June 14, 2006, the trial court for the paternity issue (the Galveston court)
held a hearing on K.R.K.'s paternity. Stamper testified to the events surrounding
K.R.K.'s conception and birth and her discovery that K.R.K. was not Knox's child. 
She also testified that she had never intentionally deceived either Knox or Taylor
about K.R.K.'s paternity. She testified that she and Taylor had noticed a resemblance
between K.R.K. and Taylor's son from another relationship, but she did not actually
consider the possibility that K.R.K. could be Taylor's daughter.

 At the hearing, Stamper made multiple attempts to introduce testimony and
other evidence that would address the element of K.R.K.'s best interest in the
paternity issue. Stamper testified about K.R.K.'s well-being and the current degree
of contact between K.R.K. and Knox. The trial court sustained Knox's first objection
to relevancy of this testimony, and, on Knox's second objection to relevancy, stated,
"I'll allow it. I don't want to go far afield, but I'll allow some." Stamper then
testified regarding her personal knowledge of K.R.K.'s physical and mental health. 
She testified that K.R.K. was suffering from fecal incontinence, was mutilating her
hands and feet, and was suffering from anxiety. Stamper testified that the anxiety was
most pronounced prior to Knox's visits and phone calls with K.R.K. Stamper
testified that K.R.K. was fearful of the phone calls with Knox, and that the anxiety
and fear she exhibited were unusual for K.R.K., who did not usually seem to be
anxious or fearful around adults. As Stamper testified about her desire to move with
K.R.K. to be near family in Indiana, counsel for Knox objected, and the trial court
questioned the relevancy of Stamper's testimony. When Stamper's counsel explained
that he was trying to establish K.R.K.'s best interest, the trial court responded,
"That's for next week. I want you to focus on paternity issues. Next week is for all
the other."

 Stamper also asked the trial court to take judicial notice of the March 2006
protective order issued by the Houston Court, along with the accompanying evidence
in support of the order. Stamper's attorney stated, "[I] would like to enter a certified
copy of the protective order and ask that the court take judicial notice under Rule 201
unless anyone has an objection." After objections from counsel for Knox, the trial
court stated, "I don't see how it's applicable. Do you have any further witnesses?" Knox also testified at the hearing. He testified that he was present at K.R.K.'s
birth, although he was serving a sentence for intoxication manslaughter at the time. 
He was released for 30 days in order to be with Stamper when K.R.K. was born. He
went back to prison for 42 days, starting when K.R.K. was 12 days old. Knox
testified that he was completely sure that he was K.R.K.'s father until he received the
anonymous phone call. Knox stated that Stamper had led him to believe that he was
K.R.K.'s father. After Knox heard rumors that Stamper and Taylor had spent some
time together while he was out of town, he confronted Stamper and Taylor, and they
assured him that their relationship had been purely platonic. Knox testified that
Stamper had never said anything to indicate that K.R.K. might not be his daughter or
that she had ever had sexual relations with Taylor.

 The trial court also heard testimony about Knox's criminal background. Knox
testified that he had been convicted of felony intoxicated manslaughter, that he had
several drug convictions in the early 1990s, and that he had been in jail on other
offenses until approximately 60 days before the hearing. Stamper's attorney also
attempted to question Knox about any evidence he had that a relationship between
Knox and K.R.K. was in K.R.K.'s best interest. However, the trial court interjected,
"I don't see how that's relevant to the issue of paternity. That certainly may be
relevant to the issue of custody, but it's not relevant today. So I want to move on." On June 16, 2006, the trial court issued an order establishing K.R.K.'s
paternity. The trial court found that Knox was not K.R.K.'s biological father, but
held that Stamper was equitably estopped from denying Knox's parentage. The order
adjudicated Knox as K.R.K.'s father and dismissed Taylor from the suit. The trial
court did not make any findings of fact regarding K.R.K.'s best interest. On July 7,
2006, the trial court entered a final decree of divorce naming Knox and Stamper as
joint managing conservators, with Stamper to establish K.R.K.'s place of residence. 
Stamper appeals the trial court's order establishing Knox's paternity. (1)

Standard of Review

 Stamper argues that Knox failed to prove by clear and convincing evidence that
he should be adjudicated as K.R.K.'s father and that the trial court abused its
discretion by failing to consider K.R.K.'s best interest. A suit to establish paternity
is brought under the uniform Parentage Act and is, therefore, a suit affecting the
parent-child relationship (SAPCR). See Tex. Fam. Code Ann. §§ 160.001-.763
(Vernon 2002 & Supp. 2007). A trial court's decision modifying the parent-child
relationship is reviewed for abuse of discretion, and will only be disturbed when it is
clear the court acted in an arbitrary or unreasonable manner, without reference to any
guiding rules or principles. Turner v. Turner, 47 S.W.3d 761, 763 (Tex.
App.--Houston [1st Dist.] 2001, no pet.) (citing Gillespie v. Gillespie, 644 S.W.2d
449, 451 (Tex. 1982) and Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990)).

 Under an abuse of discretion standard, legal and factual insufficiency are not
independent grounds of error, but rather are relevant factors in assessing whether the
trial court abused its discretion. 
-- There is no abuse of discretion as long
as some evidence of a substantive and probative character exists to support the trial
court's decision. Id. In a sufficiency review, appellate courts apply a hybrid analysis
because sufficiency-of-the-evidence and abuse-of-discretion standards of review
often overlap in family law cases. See In re D.S., 76 S.W.3d 512, 516 (Tex.
App.--Houston [14th Dist.] 2002, no pet.).

 Within this overarching standard, we engage in a two-pronged inquiry to
determine whether the trial court (1) had sufficient information on which to exercise
its discretion and (2) erred in its application of discretion. Zeifman v. Michels, 212
S.W.3d 582, 588 (Tex. App.--Austin 2006, pet. denied). The traditional sufficiency
review comes into play with regard to the first question. Id. When conducting a
legal-sufficiency review, we determine whether the evidence would enable reasonable
people to reach the judgment being reviewed. City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005). We consider favorable evidence if a reasonable fact finder
could, and we disregard contrary evidence unless a reasonable fact finder could not. 
Id. With regard to whether the trial court erred in its application of discretion, we
determine whether, based on the elicited evidence, the trial court made a reasonable
decision. Zeifman, 212 S.W.3d at 588.


Analysis

 Under section 160.631 of the Texas Family Code, a man excluded as the father
of a child by genetic testing shall be adjudicated as not being the father of the child
unless the results of other genetic testing are admitted to rebut the results of the
genetic testing. Tex. Fam. Code Ann. § 160.631(d) (Vernon 2002). Here, the trial
court correctly found that Knox was not K.R.K.'s biological parent.

 In an attempt to establish paternity in spite of the trial court's finding that he
was not K.R.K.'s biological father, Knox relied on the common law doctrine of
estoppel. Estoppel in paternity actions is "the legal determination that because of a
person's conduct, that person will not be permitted to litigate parentage." In re
Shockley, 123 S.W.3d 642, 651 (Tex. App.--El Paso 2003, no pet.); see also
Hausman v. Hausman, 199 S.W.3d 38, 41 (Tex. App.--San Antonio 2006, no pet.). 
In order to succeed on this claim, Knox had to establish that a parent-child
relationship between K.R.K. and himself was in K.R.K.'s best interest and that the
elements of common law equitable estoppel were met. Hausman, 199 S.W.2d at 42;
Shockley, 123 S.W.3d at 652.

 The application of the doctrine of estoppel in paternity actions is designed to
achieve fairness as between the parents by holding them to their prior course of
conduct regarding the paternity of the child. Shockley, 123 S.W.3d at 651-52; see
also Hausman, 199 S.W.3d at 42. It is based on the public policy that children should
be secure in knowing who their parents are so that they will be secure from the
potentially damaging trauma that may come from being told that a father the child has
known all her life is not her father. Shockley, 123 S.W.3d at 652; see also Hausman,
199 S.W.3d at 42. Thus, courts are most inclined to impose equitable estoppel to
protect the status of a child in a "recognized and operative parent-child relationship." 
Shockley, 123 S.W.3d at 652. Each such case must be determined on its own facts
with the child's best interest being "of paramount concern." Shockley, 123 S.W.3d
at 652-53; see also Hausman, 199 S.W.3d at 42; Tex. Fam. Code Ann.
§ 153.001(a)(1) (Vernon 2002) ("The public policy of this state is to assure that
children will have frequent and continuing contact with parents who have shown the
ability to act in the best interest of the child. . . .").

 We therefore consider whether Knox bore his burden of establishing (1) that
Stamper was equitably estopped from denying his paternity and (2) that it was in
K.R.K.'s best interest that he be declared her father even though it had been
conclusively established that he was not K.R.K.'s biological father.

 Equitable Estoppel

 To establish the elements of equitable estoppel, a person seeking to prohibit
another from litigating parentage must prove that (1) there was a false representation
or concealment of material facts; (2) made with knowledge, actual or constructive,
of those facts; (3) to a party without knowledge, or the means of knowledge, of those
facts; (4) with the intention that it be acted upon; and (5) the party to whom it was
made must have relied on the misrepresentation to his prejudice. Hausman, 199
S.W.3d at 43 (citing Shockley, 123 S.W.3d at 653).

 To prevail on his equitable estoppel defense, Knox first had to show that
Stamper deliberately misled him regarding K.R.K.'s paternity with the intention that
he act on her misrepresentation. The trial court heard evidence that Stamper had a
sexual relationship with both Knox and Taylor at the time K.R.K. was conceived. 
Although Stamper and Taylor both noticed the resemblance between K.R.K. and
Taylor's son from another relationship, Stamper, Knox, and Taylor all testified that
they believed K.R.K. to be Knox's child until the time Knox petitioned for divorce
and had genetic testing conducted. Thus, Knox has presented no evidence to support
an affirmative finding on any of the first three elements of estoppel. See Hausman,
199 S.W.3d at 43 (citing Shockley, 123 S.W.3d at 653).

 Nor is there any evidence that Stamper intended to deceive Knox into believing
that K.R.K. was his child to Knox's prejudice. We have found no evidence that
Stamper encouraged Knox to participate in K.R.K.'s life or otherwise led him to rely
on the mistaken view that he was K.R.K.'s father. Cf. Shockley, 123 S.W.3d at 653
(citing the elements of equitable estoppel). To the contrary, there is substantial
evidence of Stamper's attempts to protect K.R.K. from any participation by Knox in
her life, including moving from Galveston County with K.R.K., obtaining a
restraining order in the Houston court against Knox's having any contact with K.R.K.
which is to remain in effect until 2009, and vigorously pursuing legal efforts to have
Knox declared not to be the father of K.R.K. on biological or equitable estoppel
grounds.

 We hold that Knox failed to bear his burden of proving the elements of
equitable estoppel.

 Best Interest of the Child

 Knox also had to prove that it was in K.R.K.'s best interest that he be
adjudicated her father despite genetic proof that he is not her biological father. See
Hausman, 199 S.W.2d at 42; Shockley, 123 S.W.3d at 652. Stamper argues that in
determining the best interest of the child in this suit the trial court should have
considered the factors required to move for estoppel of genetic testing in a suit to
establish paternity under section 160.608 of the Family Code. (2) See Tex. Fam. Code
Ann. § 160.608 (Vernon Supp. 2007). Because section 160.608 addresses a trial
court's authority to deny a motion for an order for genetic testing to establish
paternity, however, Texas courts have held that section 160.608 of the Family Code
does not govern in cases like this one in which genetic testing has already established
biological paternity. See Hausman, 199 S.W.3d at 43; Shockley, 123 S.W.3d a 650. 
Nevertheless, those same courts have acknowledged that the theory that underlies
section 160.608(a) is the common law theory of paternity by estoppel that is
applicable here. See Hausman, 199 S.W.3d at 42 ("[T]he theory of paternity by
estoppel or equitable estoppel [is also] the theory that underlies section 160.608 . . .
."); Shockley, 123 S.W.3d at 650 ("[T]he 2001 amendments [to the Family Code]
codified paternity by estoppel, allowing a court to deny a motion for genetic testing
if the conduct of the mother or the presumed father estops that party from denying
parentage."). Therefore, while we do not deem consideration of the factors set out in
section 160.608(b) mandatory to determine the best interest of the child in a suit such
as this, where a person whose paternity has already been disproved by genetic testing
seeks to estop another from denying his paternity, we do deem them relevant to
establish whether it is in the best interest of the child for the non-biological father to
be adjudicated her father. These factors are:

(1) the length of time between the date of the proceeding to adjudicate
parentage and the date the presumed father was placed on notice that he
might not be the genetic father; (2) the length of time during which the
presumed father has assumed the role of father of the child; (3) the facts
surrounding the presumed father's discovery of his possible
nonpaternity; (4) the nature of the relationship between the child and the
presumed father; (5) the age of the child; (6) any harm that may result
to the child if presumed paternity is successfully disproved; (7) the
nature of the relationship between the child and the alleged father; (8)
the extent to which the passage of time reduces the chances of
establishing the paternity of another man and a child support obligation
in favor of the child; and (9) other factors that may affect the equities
arising from the disruption of the father-child relationship between the
child and the presumed father or the chance of other harm to the child.


Tex. Fam. Code Ann. § 160.608(b).

 Despite the trial court's erroneous refusal to admit--in response to Knox's
objections--relevant evidence on the elements of his estoppel claim regarding
whether a parent-child relationship with Knox was in K.R.K's best interest, the record
contains abundant evidence that Knox is unstable and violent, that he sexually abused
K.R.K., and that K.R.K. suffers from anxiety and other self-destructive behaviors
when she is around Knox. The trial court also heard uncontested testimony regarding
Knox's extensive criminal record, including Knox's own testimony that he had been
convicted of the felony of intoxicated manslaughter and that he had been in jail on
other offenses just 60 days before the paternity hearing took place. The record
contains no testimony regarding any harm that K.R.K. would suffer if Knox's
paternity was disproved. Indeed, the trial court forbade Knox to have unsupervised
visitation with K.R.K. after 2002, when K.R.K. was three years old, and the Houston
Court issued a protective order denying Knox all access to K.R.K. until 2009.

 With respect to the section 160.608 factors, Knox, by his own voluntary
submission to genetic testing, was placed on notice that he was not K.R.K.'s
biological father in 2001, when K.R.K. was two years old. Because Knox had been
in jail prior to K.R.K.'s birth and returned to jail just 12 days after she was born to
complete his sentence for intoxication manslaughter, and because he filed for divorce
when she was two, he assumed the role of father to K.R.K. in an ongoing relationship
for, at most, a very limited time. Even if these facts are considered to provide some
evidence that Knox assumed the role of father of K.R.K. in an ongoing father-daughter relationship, that evidence is far outweighed by the evidence of harm to
K.R.K. from Knox's being adjudicated her father and granted parental rights, and by
evidence of the nature of the relationship between Knox and K.R.K. No reasonable
fact finder could disregard the evidence of Knox's abuse of K.R.K. and find that it
was in K.R.K.'s best interest for Knox and K.R.K. to have a parent-child relationship. 
See City of Keller, 168 S.W.3d at 827; Hausman, 199 S.W.3d at 42 (citing Shockley,
123 S.W.3d at 652).

 For the foregoing reasons, we hold that Knox failed to establish his equitable
estoppel claim as a matter of law and that the trial court abused its discretion in
holding that Stamper was equitably estopped to deny Knox's paternity of K.R.K. See
Zeifman, 212 S.W.3d at 588; see also Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985) (court abuses its discretion when it rules without
regard to any guiding rules or principles).

 We sustain both of Stamper's issues.




Conclusion

 We vacate the order of the trial court establishing Knox's paternity and render
judgment that Knox is adjudicated not to be the father of K.R.K.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.

Justice Jennings, concurring.
1. On July 27, 2006, Stamper moved to transfer the suit from Galveston to the Houston
Court. The motion was granted on August 21, 2006.
2. Section 160.608(a) of the Texas Family Code provides:


 In a proceeding to adjudicate parentage, a court may deny a motion for
an order for the genetic testing of the mother, the child, and the
presumed father if the court determines that: (1) the conduct of the
mother or the presumed father estops that party from denying
parentage; and (2) it would be inequitable to disprove the father-child
relationship between the child and the presumed father.


Tex. Fam. Code Ann. § 160.608(a) (Vernon Supp. 2007).