

# Fourth Court of Appeals
## San Antonio, Texas

## CONCURRING OPINION

No. 04-24-00145-CV

**IN RE N.A.**

Original Proceeding[1]

Opinion by:     Lori Massey Brissette, Justice
Concurring Opinion by: Irene Rios, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori Massey Brissette, Justice

Delivered and Filed: October 30, 2024

I agree with the majority's conclusion that J.K.'s pleadings did not request a determination of parentage and concur in the majority's decision to grant mandamus relief for that reason alone. Because J.K. did not request a determination of parentage—and that is a sufficient basis to grant relief—it is unnecessary to address the sufficiency of the evidence supporting the trial court's parentage determination.

I am concerned the majority's opinion goes further than necessary to grant mandamus relief and addresses issues that should not be addressed in this interlocutory mandamus proceeding arising from temporary orders when those issues were not properly before the trial court. J.K. did not plead standing as a parent, and it should be left to the parties to develop that issue without

---

[1] This proceeding arises out of Cause No. 2023-CI-23309, styled *In the Interest of E.K.A.-K.*, pending in the 288th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

premature influence from this court should J.K. choose to amend her pleadings. The parties should not use dicta in the majority's opinion as an advance indication of this court's position on issues that have not been pled and thus have not yet been litigated by the parties.

Similarly, the majority makes bold legal conclusions based on a lack of evidence in the mandamus record, failing to consider the impact of its conclusion on issues that may be supported by a fully developed record at a future hearing. The majority, on one hand, states "the parties were clear that the temporary orders hearing was between a parent and non-parent[;]" but yet, it is critical of a mandamus record that does not establish parentage between *two parents*.

I would grant mandamus relief on the pleadings issue only and avoid rendering what I believe to be an advisory opinion on issues unsupported by the pleadings and based on an undeveloped record, especially when the pleadings may be amended, and those issues may become properly contested in the trial court.

Finally, I write separately to encourage the legislature to further promote the best interests of children in this state by incorporating equitable principles into the presumptive parentage statute. Section 160.204 of the Texas Family Code codified the common-law presumption that a child born to a married woman during marriage was a child of the marriage. *See* TEX. FAM. CODE. ANN. § 160.204; *see also In re Shockley*, 123 S.W.3d 642, 648–50 (Tex. App.—El Paso 2003, no pet.) (discussing the history of the marital presumption). "Although that presumption was once based upon concerns about illegitimacy and ensuring inheritance, the presumption also promoted family stability." *Treto v. Treto*, 622 S.W.3d 397, 401 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). In 2003, the legislature amended section 160.204 to include subsection 160.204(a)(5), which allows presumed parent status when a party, during the first two years of the child's life, continuously resided in the same household as the child and represented to others that the child was the party's child. *See* Act of May 28, 2003,

78th Leg., R.S., ch. 1248, § 1, sec. 160.204, 2003 Tex. Gen. Laws 3537, 3537 (current version at TEX. FAM. CODE ANN. § 160.204). The amendment is unique because it creates the only avenue that does not require marriage for presumed parentage. Until the legislature addresses the issues presented by this case, any child in a similar situation as E.K.A.-K. may be exposed to potential trauma that can occur when a person who the child has always considered a parent is not given that legal status.

The idea of applying equitable principles to protect parent-child relationships from being disrupted is not foreign to the legislature. "Woven throughout the Family Code is the clearly defined policy of this state that courts must ensure protection of a child's best interest." *In re Lee*, 411 S.W.3d 445, 471 (Tex. 2013) (Green, J., dissenting). The legislature has acted to further this policy by codifying the paternity by estoppel doctrine in section 160.608 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 160.608. Under section 160.608, a court may apply equitable principles to preserve the parent-child relationship by denying genetic testing. *Id*. § 160.608(a) ("In a proceeding to adjudicate parentage, a court may deny a motion for an order for the genetic testing of the mother, the child, and the presumed father if the court determines that: (1) the conduct of the mother or the presumed father estops that party from denying parentage; and (2) it would be inequitable to disprove the father-child relationship between the child and the presumed father.").

The doctrine essentially stands for the proposition that a person's status as a parent should not be litigated, regardless of biological status, when the party has acted as a parent to the child. *See Hausman v. Hausman*, 199 S.W.3d 38, 42–43 (Tex. App.—San Antonio 2006, no pet.); *see also Shockley*, 123 S.W.3d at 651–52. When describing the policy behind the doctrine, our sister court in El Paso succinctly stated:

> The application of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child. Estoppel is based on the public policy that

children should be secure in knowing who their parents are. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father she has known all her life is not in fact her father. In determining whether the doctrine should be applied to a particular case, the child's best interest[ is] of paramount concern. To that end, the courts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship.

*Shockley*, 123 S.W.3d at 651–52 (internal quotation marks and citations omitted).

In subsection 160.608(b), the legislature provides a non-exhaustive list of factors courts shall apply to determine whether it is equitable to preserve the parent-child relationship by denying genetic testing. Some of the non-exhaustive factors include:

> (2) the length of time during which the presumed father has assumed the role of father of the child; . . .
>
> (4) the nature of the relationship between the child and the presumed father;
>
> (5) the age of the child;
>
> (6) any harm that may result to the child if presumed paternity is successfully disproved; . . . and
>
> (9) other factors that may affect the equities arising from the disruption of the father-child relationship between the child and the presumed father or the chance of other harm to the child.

TEX. FAM. CODE. ANN. § 160.608(b).

Unsurprisingly, these equitable factors promote the state's policy of: "(1) assur[ing] that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provid[ing] a safe, stable, and nonviolent environment for the child; and (3) encourag[ing] parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." *Id*. § 153.001(a); *see also J.W.T.*, 872 S.W.2d at 197 ("The State has a legitimate interest in minimizing familial disruptions that are harmful to

the child."); *Shockley*, 123 S.W.3d at 652 ("Estoppel is based on the public policy that children should be secure in knowing who their parents are.").

Unfortunately, these equitable factors are absent from section 160.204 of the Texas Family Code, which only grants presumed parent status to an unmarried person if "during the first two years of the child's life, [the presumed parent] continuously resided in the household in which the child resided, and [the presumed parent] represented to others that the child was [the presumed parent's] own [child]." TEX. FAM. CODE ANN. § 160.204(a)(5). While the flexibility of section 160.608 may preserve and protect a parent-child relationship that promotes the best interest of the child, the rigidity in the presumed parentage statute may create a result that is contrary to this state's public policy and the child's best interest. *See Hausman*, 199 S.W.3d at 42 ("The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other.").

Equitable considerations in the presumed parentage statute would promote the best interest of the child over rigid rules because "[s]tudies confirm that the loss of—or sudden, long-term separation from—an attachment figure [like a psychological parent] creates significant psychological harm in children and can seriously injure and fragment an individual's sense of self." Rebecca L. Scharf, *Psychological Parentage,* Troxel*, and the Best Interests of the Child*, 13 GEO. J. GENDER & L. 615, 634 (2012) (internal quotation marks omitted); *see also In re C.J.C.*, 603 S.W.3d 804, 823 n.4 (Tex. 2020) (orig. proceeding) (Lehrmann, J., concurring) (noting "[t]he importance of preserving . . . family-like bonds" and pointing to Rebecca Scharf's article in the Georgetown Journal of Gender and the Law). "[S]afety, security, and stability are factors critical to child welfare, and depending on the circumstances of each case, the danger from uprooting a

child may rise to the level of significantly impairing the child's emotional development." *In re J.C.*, 346 S.W.3d 189, 194 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *In re De La Pena*, 999 S.W.2d 521, 529 (Tex. App.—El Paso 1999, no pet.)).  "Significant impairment has been inferred from uprooting a child from a nonparental caretaker when the removal would be 'devastating' or akin to 'psychological amputation' or cause 'serious psychological damage.'" *J.C.*, 346 S.W.3d at 194–95 (quoting *In re Rodriguez*, 940 S.W.2d 265, 273 (Tex. App.—San Antonio 1997, writ denied)); *see also In re N.H.*, 652 S.W.3d 488, 498 (Tex. App.—Houston [14th Dist.]. 2022, pet. denied).

The legislature has also recognized a child under three years of age is especially vulnerable to separation from a parental figure.  For example, the legislature mandated trial courts consider evidence on the following factors when crafting a possession order that meets the best interest of a child who is less than three years of age:

(1)  the caregiving provided to the child before and during the current suit;

(2)  the effect on the child that may result from separation from either party; . . .

(4)  the physical, medical, behavioral, and developmental needs of the child; . . .

(7)  the presence of siblings during periods of possession;

(8)  the child's need to develop healthy attachments to both parents;

(9)  the child's need for continuity of routine; . . . and

(13)  any other evidence of the best interest of the child.

TEX. FAM. CODE ANN. § 153.254(a).  Similar to many of the factors present in subsection 160.608(b), a majority of the section 153.254 factors recognize the need for continuity of familial attachments, including the promotion of continued visitation among siblings.  *Compare id.* § 153.254(a), *with id.* § 160.608(b); *see also id.* § 153.251(c) ("It is preferable for all children in a family to be together during periods of possession."); *In re J.R.L.*, No. 04-19-00049-CV, 2020 WL

2543315, at *5 (Tex. App.—San Antonio May 20, 2020, no pet.) (mem. op.) (alteration omitted) ("Keeping siblings together is a factor a trial court may consider when deciding the best interest of the child.").

Even from the limited mandamus record before us, this case magnifies the need for the legislature to incorporate equitable factors into the presumed parentage statute. For instance, it is undisputed that J.K. acted as a mother to E.K.A.-K. and that E.K.A.-K. calls J.K. "mom." E.K.A.-K. was born in December 2021, and lived with N.A., J.K., and E.K.A.-K.'s half-siblings in a house jointly owned by N.A. and J.K. until N.A. moved out of the home in October 2023—less than three months before E.K.A.-K.'s second birthday. Additionally, the parties' nanny testified that both N.A. and J.K. were parents to E.K.A.-K. and that E.K.A.-K. recognizes J.K.'s other children as siblings and loves them. N.A. testified, however, that she intends to sever all contact between E.K.A.-K and J.K. and E.K.A.-K.'s half-siblings.

Moreover, the result of this mandamus proceeding is especially harsh because J.K. was deprived of her path to presumed parentage—under a strict interpretation of subsection 160.204(a)(5)—*solely by N.A.'s unilateral act* of moving from the home and taking E.K.A.-K. with her only seventy-seven days before E.K.A.-K.'s second birthday.

In sum, I agree with the majority's decision to grant mandamus relief because J.K. did not plead standing as a parent. Because the majority goes further than necessary to grant relief, I respectfully concur on the pleadings issue alone. I also call on the legislature to examine the inequities presented by this case.

Irene Rios, Justice