

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00145-CV

**IN RE N.A.**

Original Proceeding[1]

Opinion by:     Lori Massey Brissette, Justice
Concurring Opinion by:  Irene Rios, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori Massey Brissette, Justice

Delivered and Filed: October 30, 2024

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

On February 29, 2024, Relator filed a petition for writ of mandamus challenging the trial court's temporary orders in this suit affecting the parent-child relationship. On the record before us, we hold the trial court abused its discretion in finding the real party in interest J.K. is a parent of the child at issue and conditionally grant the petition for writ of mandamus.

## BACKGROUND

From 2020 to 2023, N.A. and J.K. were involved in a romantic relationship. They never married, but they lived together with J.K.'s two children from a previous relationship, J. and M.[2]

---

[1] This proceeding arises out of Cause No. 2023-CI-23309, styled *In the Interest of E.K.A.-K.*, pending in the 288th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.
[2] Conservatorship of J. and M. is not at issue in this proceeding.

In December of 2021, N.A. gave birth to a child, E.K.A.-K., conceived using the same sperm donor used for the pregnancies that resulted in the births of J. and M., making the three children biological half-siblings. The child, E.K.A.-K., was given a hyphenated last name using the surnames of both women and the two women and three children lived together as a family unit.

N.A. and J.K. ended their relationship in August of 2023. In October 2023, when E.K.A.-K. was almost twenty-two months old, N.A. moved out of the shared home, taking E.K.A.-K. with her. On October 30, 2023, J.K. filed an original suit affecting the parent-child relationship (SAPCR) which alleged she had standing to seek conservatorship or possession of E.K.A.-K. because she "had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *See* TEX. FAM. CODE ANN. § 102.003(a)(9). J.K. did not assert standing as a parent under section 102.003(a)(1) of the Texas Family Code or seek a determination of parentage under Chapter 160 of the Texas Family Code, but she did ask the trial court to appoint both parties as joint managing conservators and to enter temporary orders. N.A. responded by filing a plea to the jurisdiction, which argued J.K. lacked standing to bring the suit and had failed to allege that N.A. was an unfit parent.

On November 28, 2023, J.K. amended her SAPCR petition. Like her original petition, the amended petition again alleged only that she had standing under section 102.003(a)(9) of the Texas Family Code. However, her amended petition included a supporting affidavit that described herself as E.K.A.-K.'s "other mother" and "parent figure," referred to J.K.'s parents as E.K.A.-K's "grandparents," and made similar assertions relating to the child's relationship with further extended family of J.K. The affidavit stated that N.A. and J.K. jointly decided to have a child together and that E.K.A.-K. was that child. N.A. filed special exceptions to the amended petition questioning whether J.K.'s claim was as a parent or non-parent.

On December 11, 2023, the trial court held a hearing on J.K.'s request for temporary orders but first heard arguments on N.A.'s special exceptions. In response, counsel for J.K. stated,

> The issue of whether or not – what capacity we're bringing this suit – my client – and it's in her affidavit – she's not a parent. I didn't bring a standing claim that she's a parent. She is biologically not the parent of this child. . . .
>
> . . . . The only standing I have is [Texas Family Code section 102.003(a)(9)].

The trial court then denied the special exceptions and moved forward to the evidence on temporary orders.

After hearing testimony from J.K., N.A., and the children's nanny, the trial court rendered temporary orders in which it found that both N.A. and J.K. are the parents of E.K.A.-K. because they both "acted with the intent to parent." The trial court named both N.A. and J.K. as joint managing conservators, awarded J.K. visitation and ordered her to pay child support to N.A., appointed an amicus attorney for the child, ordered a psychological evaluation, and enjoined N.A. from changing the name of the child during the pendency of the proceeding.[3] No other findings were made by the court. N.A. then filed this original proceeding.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will generally issue only to correct a clear abuse of discretion where there is no adequate remedy by law. *See, e.g.*, *In re Davila*, 510 S.W.3d 455, 457 (Tex. App.—San Antonio 2013, orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion . . . ." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

---

[3] The trial court ruled that J.K. was E.K.A.-K's parent at the conclusion of a hearing on temporary orders, held December 11, 2023 (the December Hearing). On February 14, 2024, the court signed the temporary orders rendered at the conclusion of the December Hearing.

A litigant may properly file a petition for writ of mandamus to challenge temporary orders in a child custody case because such orders are interlocutory and not appealable. *In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding); *Little v Daggett*, 858 S.W.2d 368, 369 (Tex. 1993) (orig. proceeding); *In re Sanchez*, 228 S.W.3d 214, 217 (Tex. App.—San Antonio 2007, orig. proceeding).

Mandamus may be appropriate when parties are in danger of permanently losing substantial rights. *Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210–11 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 843–44. It may also be appropriate when mandamus allows the court to give needed direction regarding the law and where it will spare litigants the time and money involved in improperly conducted proceedings. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

### ANALYSIS

Prior to the temporary orders hearing, N.A. filed special exceptions to J.K.'s amended petition contending she did not have fair notice of whether J.K. was advancing rights as a parent or a non-parent and that she, therefore, could not determine the standard before the court or the evidence that would be relevant to it. In response, J.K.'s counsel clarified that she was not seeking standing as a parent and that she, in fact, was not the parent of this child. This comports with J.K.'s pleading which cites only Texas Family Code section 102.003(a)(9) in support for her claim of conservatorship, a statute which applies to non-parents seeking access to a child.[4]

However, J.K.'s counsel went on to state that J.K. had "acted as a parent" since the birth of the child and was seeking to be appointed joint managing conservator and to acquire "the rights

---

[4] The evidence establishes that J.K. had standing to bring the suit affecting the parent-child relationship as a non-parent under Texas Family Code section 102.003(a)(9). That section expressly confers standing upon a person "who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9). Those facts are undisputed.

and duties of a parent as set forth in 153.132." As well, in an affidavit attached to her amended petition, J.K. used terms like "parent" and "parent figure." When N.A. again sought to clarify whether J.K. was advancing rights as a parent or a non-parent, the trial court stated, "[T]he beauty of family litigation is that she doesn't have to commit before temporary orders." Special exceptions were then denied and the temporary orders hearing proceeded.

"Texas is a 'fair notice' state, which means that all parties are entitled to fair notice of a claim." *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied) (quoting *In re Russell*, 321 S.W.3d 846, 855 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied])); *see* TEX. R. CIV. P. 45, 47. "The test of fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him, can determine the nature of the controversy and the testimony probably relevant." *City of Houston v. Howard*, 786 S.W.2d 391, 393 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *see In re J.O.*, No. 04-19-00381-CV, 2019 WL 6719029, at *6 (Tex. App.—San Antonio, Dec. 11, 2019, orig. proceeding) (mem. op.) (holding fair notice was not provided in a custody matter where court went beyond the pleaded claim to terminate parental rights by also finalizing adoption of the children by third parties).

Texas courts provide more leeway in a custody case when it comes to pleading. In fact, this court quoted the Texas Supreme Court in *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) when it stated,

> [W]e are of the view that a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child. The courts are given wide discretion in such proceedings. Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children. . . . [O]nce the child is brought under its jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence.

*In re J.O.*, 2019 WL 6719029, at *6 (alterations in original) (emphasis added) (quoting *Leithold*, 413 S.W.2d at 701).

But, even with such leeway, we must remember that the determination of parentage is of constitutional import. *See Troxel v. Granville*, 530 U.S. 57, 65–67 (2000) (plurality op.); *In re C.J.C.*, 603 S.W.3d 804, 808 (Tex. 2020) (orig. proceeding). Notably, *Leithold* and other cases following it did not involve a lack of clarity around whether a parent's fundamental right to make decisions about the care, custody, and control of their child was being challenged by a parent or a non-parent. *Leithold*, 413 S.W.2d at 701 (reviewing modifications to a visitation order involving two biological parents); *In re G.M.*, No. 04-13-00689, 2014 WL 1242662, at *3 (Tex. App.—San Antonio March 26, 2014, no pet.) (mem. op.) (applying *Leithold* to affirm a judgment removing a grandmother as managing conservator where the Department only pled for its appointment as sole managing conservator). This is important because that distinction changes the character of the relevant evidence, changes the standard to be applied when determining a request for access to a child, and is the difference between a challenge of parties with equal rights and a challenge that unilaterally impacts the fundamental rights of one party.

In *In re M.G.N.*, even where we applied *Leithold* to affirm a modification to a conservatorship order between two biological parents, we recognized that "[t]he Texas Family Code specifically requires parties to include in their pleadings a 'statement describing what action the court is requested to take concerning the child and the statutory grounds on which the request is made.'" 491 S.W.3d at 408 (quoting TEX. FAM. CODE ANN. § 102.008(b)(10)); *see In re Russell*, 321 S.W.3d 846, 855 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). And, we noted, that "[w]ithout proper pleadings and evidence, a trial court exceeds its authority" when it issues orders affecting the custody of a child. *In re M.G.N.*, 491 S.W.3d at 406 (quoting *In re*

*M.B.B.-Y.*, No. 04-10-00541-CV, 2011 WL 1303437, at *2 (Tex. App.—San Antonio Apr. 6, 2011, no pet.) (mem. op)).

While N.A. does not assert that the trial court abused its discretion in failing to grant the special exceptions, she does contend that the trial court abused its discretion by finding J.K to be a parent absent pleadings and evidence that would support such a finding. We agree.

Even now, J.K. fails to bring forth any pleadings that support either her standing as a parent or a determination of parentage under Chapter 160 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 160.201 (Establishment of Parent-Child Relationship), 160.602 (Standing to Maintain Proceeding). Further, contrary to the trial court's assertions in the record, we cannot hold the issue was tried by consent.

> The doctrine of trial by consent, however, only applies when the record as a whole shows the unpled issue was tried. . . . "A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." The doctrine of trial by consent "is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation."

*In re M.G.N.*, 491 S.W.3d at 407 (citations omitted). From the record before us, it seems the only person who had any intention to try the issue of parentage was the trial court judge. Both parties were clear that the temporary orders hearing was between a parent and non-parent.[5]

Further, there is nothing in the record that would demonstrate that J.K. has a legal basis for parentage. She did not give birth to E.K.A.-K. *See* TEX. FAM. CODE ANN. § 160.201(a)(1). She took no steps to attempt to adopt E.K.A.-K. *See* TEX. FAM. CODE ANN. § 160.201(a)(3). She did

---

[5] It is clear from the record that the trial court intended to turn this matter into something neither party was advancing and entered the finding of parentage, not based on the law, but to shed light on the lack of legislative action with regard to parentage determinations in same-sex families. The trial court even stated on the record during the February 2024 Motion to Enter hearing, "And, honestly, I think if the Fourth Court needs to weigh in, they should weigh in, and perhaps that would prompt the Texas Legislature to get off this space of nonaction, because not only is this family ill-served by the lack of action, but there are thousands of families that are ill-served by the lack of action."

not attempt to sign the birth certificate or make an acknowledgement of maternity. *See* TEX. FAM. CODE ANN. §§ 160.201(b)(2), 160.301.[6] And, the parties were not married. *See* TEX. FAM. CODE ANN. §§ 160.201(b)(5), 160.204(a). While Chapter 160 does have a provision for "intended parents," that term is defined as "individuals who enter into an agreement providing that the individuals will be the parents of a child born to a gestational mother by means of assisted reproduction regardless of whether either individual has a genetic relationship with the child." TEX. FAM. CODE ANN. §§ 160.102(9) (defining intended parents), 160.754–63 (authorizing gestational agreements and describing intended parents' rights under gestational agreements). Not only did J.K. not assert this ground at the trial court or in her brief to this court, but there is no evidence of such a gestational agreement.[7]

Other Texas courts of appeals have held that a female *marital* partner of a child's biological mother may be a presumed parent of that child under section 160.204 of the Texas Family Code. *See In re D.A.A.-B.*, 657 S.W.3d 549, 559–63 (Tex. App.—El Paso 2022, no pet.) (citing *Obergefell v. Hodges*, 576 U.S. 644, 675 (2015)); *Treto v. Treto*, 622 S.W.3d 397, 399–403 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). Texas Family Code section 160.204, however, requires that the party seeking parentage be either married to the mother of the child or establish that they resided with the child continuously for the first two years of the child's life and represented that the child was their own. TEX. FAM. CODE ANN. § 160.204. Here, the parties never married, and they ceased living together before E.K.A.-K.'s second birthday.[8] Thus, we need not

---

[6] Texas Family Code section 160.106 states, "The provisions of this chapter relating to the determination of paternity apply to a determination of maternity."

[7] There is in the record a document showing the transfer of sperm to N.A. from J.K., originating from the same donor used for the pregnancies of J.K.'s other two children. However, that document simply allows N.A. to use the sperm for her own assisted reproduction. Neither party advances that such document constitutes a gestational agreement within the meaning of Texas Family Code section 160.102(9).

[8] The trial court explicitly recognized that E.K.A.-K. was "not quite two, yet" at the hearing on the request for temporary orders.

reach the issue of whether the parental presumption under section 160.204(5) could apply here. *See id.*.

J.K. also argues the trial court could have reasonably concluded N.A. is equitably estopped from disputing that J.K. is E.K.A-K's parent. But the statutory form of "parentage by estoppel" arises from section 160.608 of the Texas Family Code, which requires the existence of a presumed parent. *See* TEX. FAM. CODE ANN. § 160.608(a). That section provides as follows:

> [A trial] court may deny a motion for an order for the genetic testing of the mother, the child, and the presumed father if the court determines that:
>
> (1) the conduct of the mother or the presumed father estops that party from denying parentage; and
>
> (2) it would be inequitable to disprove the father-child relationship between the child and the *presumed father*.

TEX. FAM. CODE ANN. § 160.608(a) (emphasis added); *see Hausman v. Hausman*, 199 S.W.3d 38, 41–43 (Tex. App.—San Antonio 2006, no pet.) (examining section 160.608 and "paternity by estoppel"). As explained above, there is simply no evidence to support the conclusion that J.K. is a presumed parent under Texas Family Code section 160.608.

As well, the common law does not support a finding of "parentage by estoppel" on these facts. In our analysis in *Hausman*, which J.K. cites in her mandamus response, we affirmed a trial court's order finding that a biological mother was equitably estopped from denying that her ex-husband was the father of a child conceived and born during the couple's marriage. *Hausman*, 199 S.W.3d at 40–41. The ex-husband did not learn he was not the child's biological father until he obtained a genetic test during the parties' divorce proceedings. *Id.* at 41. He testified at trial that his ex-wife "never discussed with him the possibility of him not being [the child's] father," represented to him that he was the father, and concealed the fact that she engaged in sexual relations with another man without using contraception. *Id.* at 43–44; *cf. In re Shockley*, 123 S.W.3d 642, 644–45, 651 (Tex. App.—El Paso 2003, no pet.) (mother estopped from denying non-

biological father's paternity where, inter alia, non-biological father believed he was the biological father, both parties signed the child's birth certificate and filed lawsuits alleging he was the child's father, and mother did not amend her petition to allege otherwise until she and another man obtained genetic tests without non-biological father's knowledge).

Here, in contrast, there was no deception. J.K. always knew she was not E.K.A.-K.'s biological parent. Her counsel reiterated her knowledge in that regard when arguing the special exceptions. It is undisputed that despite this knowledge, she did not take any formal steps to be recognized as E.K.A.-K.'s legal parent prior to her separation from N.A., either to protect her own rights as a parent or to solidify her responsibilities to the child. *See, e.g.*, *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) ("[E]quity aids the diligent and not those who slumber on their rights." (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941) (orig. proceeding))).

It is worth noting, for clarity, that our holding here does not turn on J.K.'s gender or the fact that the parties were involved in a same-sex relationship. We would arrive at the same decision if J.K. were N.A.'s former boyfriend. The simple fact that someone agrees to help parent a child, without taking any steps to legitimize their status in terms of rights and responsibilities to that child, does not make them a parent. The Texas Supreme Court, in *In re H.S.*, recognized that there are times when non-parents play a "parent-like role." 550 S.W.3d 151, 160 (Tex. 2018). That, however, does not change the fact that their standing is conferred as a non-parent and, therefore, they must overcome the presumption in favor of a fit parent set forth in Texas Family Code section 153.131. *See* TEX. FAM. CODE ANN. § 153.131. We are mindful that a determination of parentage in this case would create precedent that could be used in a multitude of situations (i.e., former step-

parent, grandparent, romantic partner, even roommate) to circumvent the legal standards established by the Texas Legislature in Texas Family Code section 153.131.

## CONCLUSION

On the record before us, absent any pleading setting forth standing as a parent or a request for a determination of parentage and absent evidence presented in the temporary orders hearing that would support a legal basis of parentage, we conclude it was an abuse of discretion for the trial court to find that J.K. is a parent to E.K.A.-K. Because the temporary orders all follow from that finding, and because N.A. has no adequate legal remedy by appeal, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate these temporary orders. *See In re Walser*, 648 S.W.3d 442, 445 (Tex. App.—San Antonio 2021, orig. proceeding). The writ of mandamus will issue only if the trial court fails to comply within ten days of the date of this opinion and order.

Lori Massey Brissette, Justice