**Michelle STAMPER, f/k/a Michelle Knox, Appellant,**

v.

**Stanley Keith KNOX, Appellee.**

**No. 01–06–00875–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 20, 2008.

Thomas H. Burton III, Justice for Children, Houston, TX, for Appellant.

Stanley K. Knox, Santa Fe, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN ·V. KEYES, Justice.

Appellant, Michelle Stamper, formerly known as Michelle Knox, appeals the trial court's order finding that appellee, Stanley Keith Knox, was not the biological father of K.R.K. but that Stamper was equitably estopped from denying Knox's parentage. In two issues, Stamper contends that (1) Knox did not prove through clear and convincing evidence that he should be adjudicated K.R.K.'s father on equitable grounds and that (2) the trial court abused its discretion by refusing to consider K.R.K.'s best interest when determining whether Knox should be adjudicated as K.R.K.'s father on equitable grounds.

We reverse and render.

### Background

Stamper and Knox were married in June 1998. In October 1998, Stamper had a brief sexual relationship with Jason Christopher Taylor, and she was also having sexual relations with Knox. K.R.K. was born on June 20, 1999. At the time of K.R.K.'s birth, Stamper and Knox were still married, and both believed K.R.K. was Knox's child. In September 2001, Knox filed a petition for divorce seeking custody of K.R.K., and Stamper and Knox ceased living together as husband and wife. The trial court issued a standard temporary custody order naming Stamper and Knox joint managing conservators of K.R.K. with standard rights of possession.

Shortly after he petitioned for divorce, Knox received an anonymous phone call informing him that K.R.K. might not be his child. He had genetic testing conducted which revealed that he was not K.R.K.'s biological father, and he informed Stamper of that fact through his attorney. Stamper and Taylor then had another genetic test conducted which confirmed that Taylor

was K.R.K.'s biological father. Although Taylor initially petitioned to establish himself as K.R.K.'s father and signed an admission of paternity, he later signed an affidavit of relinquishment of parental rights in June 2002 and filed a motion for nonsuit.

In August 2002, K.R.K. made an outcry of sexual abuse to Stamper, naming Knox as the abuser. Stamper filed a motion for additional temporary orders asking the trial court to deny Knox access to K.R.K. In support of her motion, Stamper offered the supporting affidavit of a social worker who had worked with K.R.K. and had heard K.R.K.'s claims of abuse, as well as evidence from medical professionals. A pretrial conference was held on October 24, 2003. During the conference, the trial ordered a psychological evaluation of the parties. In March 2004, the court-ordered psychological evaluation of Stamper, Knox and K.R.K. was completed. The examiner, Mary Alvarez, Ph.D., found that K.R.K.'s behaviors and allegations were consistent with the abuse K.R.K. had alleged because K.R.K.'s allegations had been consistent over time and were accompanied by other behaviors that were uncharacteristic for her but were not surprising for victims of abuse. Alvarez found it unlikely that K.R.K. was making up the allegations of abuse or that Stamper had "coached" K.R.K. into accusing Knox. Alvarez also found that Knox's evaluation results were "extremely concerning because [he] meets the psychodiagnostic criteria to be considered a psychopath (i.e., sociopath)." Alvarez characterized this as a "*severe* personality disorder and behavioral disorder" with a poor long-term prognosis. Alvarez also reported that Knox showed indications of suffering from bipolar disorder. She concluded that there was significant evidence to support her recommendation that K.R.K. have only supervised contact with Knox and that "[d]ue to the extreme degree of Mr. Knox's psychopathology, the only safe place for [K.R.K.] to have any contact with Mr. Knox is at a structured supervisory facility that employs individuals capable of high levels of supervision, who are familiar with psychopathic individuals."

Stamper and K.R.K. subsequently moved to Harris County, Texas, where Stamper sought a protective order against Knox. In March 2006, the 311th Judicial District Court of Harris County (the Houston court) issued a protective order in favor of Stamper and K.R.K. The Houston court found that Knox had committed family violence and that family violence was likely to occur in the future so that a protective order was in the best interest of Stamper and K.R.K. and necessary for their welfare and safety. The Houston court's order prohibited Knox from having contact with K.R.K. The Houston court eventually extended the order to remain in force until 2009. The evidence in support of the protective order showed that Knox had sexually abused K.R.K. This evidence included a medical exam conducted in July 2002, as well as the affidavit of Jana Kixmiller, LCSW, a counselor and Vice President of Children and Family Services for LifeSpring Mental Health Services in Jeffersonville, Indiana, who had seen K.R.K. in 11 therapy sessions from March through June 2003. The affidavit stated, "[K.R.K.] has expressed during therapy sessions that she does not feel 'safe' with her 'daddy,'" and it detailed K.R.K.'s allegations of sexual abuse by Knox. The evidence also showed that Dr. David McCormick, Professor of Pediatrics at University of Texas Medical Branch, stated, "Please be informed that [K.R.K.] has significant behavioral regression after she visits her father."

On June 14, 2006, the trial court for the paternity issue (the Galveston court) held a

hearing on K.R.K.'s paternity. Stamper testified to the events surrounding K.R.K.'s conception and birth and her discovery that K.R.K. was not Knox's child. She also testified that she had never intentionally deceived either Knox or Taylor about K.R.K.'s paternity. She testified that she and Taylor had noticed a resemblance between K.R.K. and Taylor's son from another relationship, but she did not actually consider the possibility that K.R.K. could be Taylor's daughter.

At the hearing, Stamper made multiple attempts to introduce testimony and other evidence that would address the element of K.R.K.'s best interest in the paternity issue. Stamper testified about K.R.K.'s well-being and the current degree of contact between K.R.K. and Knox. The trial court sustained Knox's first objection to relevancy of this testimony, and, on Knox's second objection to relevancy, stated, "I'll allow it. I don't want to go far afield, but I'll allow some." Stamper then testified regarding her personal knowledge of K.R.K.'s physical and mental health. She testified that K.R.K. was suffering from fecal incontinence, was mutilating her hands and feet, and was suffering from anxiety. Stamper testified that the anxiety was most pronounced prior to Knox's visits and phone calls with K.R.K. Stamper testified that K.R.K. was fearful of the phone calls with Knox, and that the anxiety and fear she exhibited were unusual for K.R.K., who did not usually seem to be anxious or fearful around adults. As Stamper testified about her desire to move with K.R.K. to be near family in Indiana, counsel for Knox objected, and the trial court questioned the relevancy of Stamper's testimony. When Stamper's counsel explained that he was trying to establish K.R.K.'s best interest, the trial court responded, "That's for next week. I want you to focus on paternity issues. Next week is for all the other."

Stamper also asked the trial court to take judicial notice of the March 2006 protective order issued by the Houston Court, along with the accompanying evidence in support of the order. Stamper's attorney stated, "[I] would like to enter a certified copy of the protective order and ask that the court take judicial notice under Rule 201 unless anyone has an objection." After objections from counsel for Knox, the trial court stated, "I don't see how it's applicable. Do you have any further witnesses?" Knox also testified at the hearing. He testified that he was present at K.R.K.'s birth, although he was serving a sentence for intoxication manslaughter at the time. He was released for 30 days in order to be with Stamper when K.R.K. was born. He went back to prison for 42 days, starting when K.R.K. was 12 days old. Knox testified that he was completely sure that he was K.R.K.'s father until he received the anonymous phone call. Knox stated that Stamper had led him to believe that he was K.R.K.'s father. After Knox heard rumors that Stamper and Taylor had spent some time together while he was out of town, he confronted Stamper and Taylor, and they assured him that their relationship had been purely platonic. Knox testified that Stamper had never said anything to indicate that K.R.K. might not be his daughter or that she had ever had sexual relations with Taylor.

The trial court also heard testimony about Knox's criminal background. Knox testified that he had been convicted of felony intoxicated manslaughter, that he had several drug convictions in the early 1990s, and that he had been in jail on other offenses until approximately 60 days before the hearing. Stamper's attorney also attempted to question Knox about any evidence he had that a relationship between Knox and K.R.K. was in K.R.K.'s best interest. However, the trial court inter-

jected, "I don't see how that's relevant to the issue of paternity. That certainly may be relevant to the issue of custody, but it's not relevant today. So I want to move on." On June 16, 2006, the trial court issued an order establishing K.R.K.'s paternity. The trial court found that Knox was not K.R.K.'s biological father, but held that Stamper was equitably estopped from denying Knox's parentage. The order adjudicated Knox as K.R.K.'s father and dismissed Taylor from the suit. The trial court did not make any findings of fact regarding K.R.K.'s best interest. On July 7, 2006, the trial court entered a final decree of divorce naming Knox and Stamper as joint managing conservators, with Stamper to establish K.R.K.'s place of residence. Stamper appeals the trial court's order establishing Knox's paternity.[1]

## Standard of Review

■ Stamper argues that Knox failed to prove by clear and convincing evidence that he should be adjudicated as K.R.K.'s father and that the trial court abused its discretion by failing to consider K.R.K.'s best interest. A suit to establish paternity is brought under the uniform Parentage Act and is, therefore, a suit affecting the parent-child relationship (SAPCR). *See* Tex. Fam.Code Ann. §§ 160.001–.763 (Vernon 2002 & Supp.2007). A trial court's decision modifying the parent-child relationship is reviewed for abuse of discretion, and will only be disturbed when it is clear the court acted in an arbitrary or unreasonable manner, without reference to any guiding rules or principles. *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982) and *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990)).

■ Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *In re T.J.L.*, 97 S.W.3d 257, 266 (Tex.App.-Houston [14th Dist.] 2002, no pet.). There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id.* In a sufficiency review, appellate courts apply a hybrid analysis because sufficiency-of-the-evidence and abuse-of-discretion standards of review often overlap in family law cases. *See In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.-Houston [14th Dist.] 2002, no pet.).

■ Within this overarching standard, we engage in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex.App.-Austin 2006, pet. denied). The traditional sufficiency review comes into play with regard to the first question. *Id.* When conducting a legal-sufficiency review, we determine whether the evidence would enable reasonable people to reach the judgment being reviewed. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider favorable evidence if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.* With regard to whether the trial court erred in its application of discretion, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Zeifman*, 212 S.W.3d at 588.

## Analysis

Under section 160.631 of the Texas Family Code, a man excluded as the father

---

1. On July 27, 2006, Stamper moved to transfer the suit from Galveston to the Houston Court. The motion was granted on August 21, 2006.

of a child by genetic testing shall be adjudicated as not being the father of the child unless the results of other genetic testing are admitted to rebut the results of the genetic testing. TEX. FAM.CODE ANN. § 160.631(d) (Vernon 2002). Here, the trial court correctly found that Knox was not K.R.K.'s biological parent.

■ In an attempt to establish paternity in spite of the trial court's finding that he was not K.R.K.'s biological father, Knox relied on the common law doctrine of estoppel. Estoppel in paternity actions is "the legal determination that because of a person's conduct, that person will not be permitted to litigate parentage." *In re Shockley*, 123 S.W.3d 642, 651 (Tex.App.-El Paso 2003, no pet.); *see also Hausman v. Hausman*, 199 S.W.3d 38, 41 (Tex.App.-San Antonio 2006, no pet.). In order to succeed on this claim, Knox had to establish that a parent-child relationship between K.R.K. and himself was in K.R.K.'s best interest and that the elements of common law equitable estoppel were met. *Hausman*, 199 S.W.3d at 42; *Shockley*, 123 S.W.3d at 652.

■ The application of the doctrine of estoppel in paternity actions is designed to achieve fairness as between the parents by holding them to their prior course of conduct regarding the paternity of the child. *Shockley*, 123 S.W.3d at 651–52; *see also Hausman*, 199 S.W.3d at 42. It is based on the public policy that children should be secure in knowing who their parents are so that they will be secure from the potentially damaging trauma that may come from being told that a father the child has known all her life is not her father. *Shockley*, 123 S.W.3d at 652; *see also Hausman*, 199 S.W.3d at 42. Thus, courts are most inclined to impose equitable estoppel to protect the status of a child in a "recognized and operative parent-child relationship." *Shockley*, 123 S.W.3d at

652. Each such case must be determined on its own facts with the child's best interest being "of paramount concern." *Shockley*, 123 S.W.3d at 652–53; *see also Hausman*, 199 S.W.3d at 42; TEX. FAM.CODE ANN. § 153.001(a)(1) (Vernon 2002) ("The public policy of this state is to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child....").

We therefore consider whether Knox bore his burden of establishing (1) that Stamper was equitably estopped from denying his paternity and (2) that it was in K.R.K.'s best interest that he be declared her father even though it had been conclusively established that he was not K.R.K.'s biological father.

### Equitable Estoppel

■ To establish the elements of equitable estoppel, a person seeking to prohibit another from litigating parentage must prove that (1) there was a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) to a party without knowledge, or the means of knowledge, of those facts; (4) with the intention that it be acted upon; and (5) the party to whom it was made must have relied on the misrepresentation to his prejudice. *Hausman*, 199 S.W.3d at 43 (citing *Shockley*, 123 S.W.3d at 653).

To prevail on his equitable estoppel defense, Knox first had to show that Stamper deliberately misled him regarding K.R.K.'s paternity with the intention that he act on her misrepresentation. The trial court heard evidence that Stamper had a sexual relationship with both Knox and Taylor at the time K.R.K. was conceived. Although Stamper and Taylor both noticed the resemblance between K.R.K. and Taylor's son from another relationship, Stamper,

Knox, and Taylor all testified that they believed K.R.K. to be Knox's child until the time Knox petitioned for divorce and had genetic testing conducted. Thus, Knox has presented no evidence to support an affirmative finding on any of the first three elements of estoppel. *See Hausman,* 199 S.W.3d at 43 (citing *Shockley,* 123 S.W.3d at 653).

Nor is there any evidence that Stamper intended to deceive Knox into believing that K.R.K. was his child to Knox's prejudice. We have found no evidence that Stamper encouraged Knox to participate in K.R.K.'s life or otherwise led him to rely on the mistaken view that he was K.R.K.'s father. *Cf. Shockley,* 123 S.W.3d at 653 (citing the elements of equitable estoppel). To the contrary, there is substantial evidence of Stamper's attempts to protect K.R.K. from any participation by Knox in her life, including moving from Galveston County with K.R.K., obtaining a restraining order in the Houston court against Knox's having any contact with K.R.K. which is to remain in effect until 2009, and vigorously pursuing legal efforts to have Knox declared not to be the father of K.R.K. on biological or equitable estoppel grounds.

We hold that Knox failed to bear his burden of proving the elements of equitable estoppel.

### Best Interest of the Child

 Knox also had to prove that it was in K.R.K.'s best interest that he be adjudicated her father despite genetic proof that he is not her biological father. *See Hausman,* 199 S.W.3d at 42; *Shockley,* 123

S.W.3d at 652. Stamper argues that in determining the best interest of the child in this suit the trial court should have considered the factors required to move for estoppel of genetic testing in a suit to establish paternity under section 160.608 of the Family Code.[2] *See* TEX. FAM.CODE ANN. § 160.608 (Vernon Supp.2007). Because section 160.608 addresses a trial court's authority to deny a motion for an order for genetic testing to establish paternity, however, Texas courts have held that section 160.608 of the Family Code does not govern in cases like this one in which genetic testing has already established biological paternity. *See Hausman,* 199 S.W.3d at 43; *Shockley,* 123 S.W.3d a 650. Nevertheless, those same courts have acknowledged that the theory that underlies section 160.608(a) is the common law theory of paternity by estoppel that is applicable here. *See Hausman,* 199 S.W.3d at 42 ("[T]he theory of paternity by estoppel or equitable estoppel [is also] the theory that underlies section 160.608...."); *Shockley,* 123 S.W.3d at 650 ("[T]he 2001 amendments [to the Family Code] codified paternity by estoppel, allowing a court to deny a motion for genetic testing if the conduct of the mother or the presumed father estops that party from denying parentage."). Therefore, while we do not deem consideration of the factors set out in section 160.608(b) mandatory to determine the best interest of the child in a suit such as this, where a person whose paternity has already been disproved by genetic testing seeks to estop another from denying his paternity, we do deem them relevant to establish whether it is in the best interest

---

**2.** Section 160.608(a) of the Texas Family Code provides:

In a proceeding to adjudicate parentage, a court may deny a motion for an order for the genetic testing of the mother, the child, and the presumed father if the court determines that: (1) the conduct of the mother

or the presumed father estops that party from denying parentage; and (2) it would be inequitable to disprove the father-child relationship between the child and the presumed father.

TEX. FAM.CODE ANN. § 160.608(a) (Vernon Supp.2007).

of the child for the non-biological father to be adjudicated her father. These factors are:

> (1) the length of time between the date of the proceeding to adjudicate parentage and the date the presumed father was placed on notice that he might not be the genetic father; (2) the length of time during which the presumed father has assumed the role of father of the child; (3) the facts surrounding the presumed father's discovery of his possible nonpaternity; (4) the nature of the relationship between the child and the presumed father; (5) the age of the child; (6) any harm that may result to the child if presumed paternity is successfully disproved; (7) the nature of the relationship between the child and the alleged father; (8) the extent to which the passage of time reduces the chances of establishing the paternity of another man and a child support obligation in favor of the child; and (9) other factors that may affect the equities arising from the disruption of the father-child relationship between the child and the presumed father or the chance of other harm to the child.

TEX. FAM.CODE ANN. § 160.608(b).

Despite the trial court's erroneous refusal to admit—in response to Knox's objections—relevant evidence on the elements of his estoppel claim regarding whether a parent-child relationship with Knox was in K.R.K's best interest, the record contains abundant evidence that Knox is unstable and violent, that he sexually abused K.R.K., and that K.R.K. suffers from anxiety and other self-destructive behaviors when she is around Knox. The trial court also heard uncontested testimony regarding Knox's extensive criminal record, including Knox's own testimony that he had been convicted of the felony of intoxicated manslaughter and that he had been in jail on other offenses just 60 days before the paternity hearing took place. The record contains no testimony regarding any harm that K.R.K. would suffer if Knox's paternity was disproved. Indeed, the trial court forbade Knox to have unsupervised visitation with K.R.K. after 2002, when K.R.K. was three years old, and the Houston Court issued a protective order denying Knox all access to K.R.K. until 2009.

With respect to the section 160.608 factors, Knox, by his own voluntary submission to genetic testing, was placed on notice that he was not K.R.K.'s biological father in 2001, when K.R.K. was two years old. Because Knox had been in jail prior to K.R.K.'s birth and returned to jail just 12 days after she was born to complete his sentence for intoxication manslaughter, and because he filed for divorce when she was two, he assumed the role of father to K.R.K. in an ongoing relationship for, at most, a very limited time. Even if these facts are considered to provide some evidence that Knox assumed the role of father of K.R.K. in an ongoing father-daughter relationship, that evidence is far outweighed by the evidence of harm to K.R.K. from Knox's being adjudicated her father and granted parental rights, and by evidence of the nature of the relationship between Knox and K.R.K. No reasonable fact finder could disregard the evidence of Knox's abuse of K.R.K. and find that it was in K.R.K.'s best interest for Knox and K.R.K. to have a parent-child relationship. See City of Keller, 168 S.W.3d at 827; Hausman, 199 S.W.3d at 42 (citing Shockley, 123 S.W.3d at 652).

For the foregoing reasons, we hold that Knox failed to establish his equitable estoppel claim as a matter of law and that the trial court abused its discretion in holding that Stamper was equitably estopped to deny Knox's paternity of K.R.K. See Zeifman, 212 S.W.3d at 588; see also

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985) (court abuses its discretion when it rules without regard to any guiding rules or principles).

We sustain both of Stamper's issues.

### Conclusion

We vacate the order of the trial court establishing Knox's paternity and render judgment that Knox is adjudicated not to be the father of K.R.K.

Justice JENNINGS, concurring.

### CONCURRING OPINION

TERRY JENNINGS, Justice.

Appellant, Michelle Stamper, formerly known as Michelle Knox ("Stamper"), challenges a portion of a final divorce decree, in which the trial court ordered that appellee, Stanley Keith Knox ("Knox"), be joint managing conservator of her daughter. This portion of the decree is based on the trial court's June 14, 2006 "Order Establishing Paternity," in which the trial court held that Stamper is "equitably estopped from denying" that Knox is the father of the child, adjudicated that Knox is the father of the child, and established the parent-child relationship between Knox and the child.

In her second issue, Stamper argues that the trial court erred in adjudicating Knox as the child's father on equitable grounds because, in doing so, the trial court did not consider the best interest of the child. The reporter's record clearly reveals that the trial court, in determining parentage, chose not to consider the child's best interests.

However, in determining whether the doctrine of equitable estoppel even applies in a case such as this, "the child's best interests are of paramount concern." *In re Shockley,* 123 S.W.3d 642, 652 (Tex.

App.-El Paso 2003, no pet.). As explained by the El Paso Court of Appeals,

> The application of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child. Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father she has known all her life is not in fact her father. In determining whether the doctrine should be applied to a particular case, the child's best interests are of paramount concern. To that end, the courts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship.

*Id.* at 651–52 (internal citations and quotations omitted).

Here, Knox has not filed a brief in defense of the trial court's order, and we must, therefore, "accept as true the facts stated" in Stamper's brief. Tex.R.App. P. 38.1(f). As outlined in the majority opinion, the facts, which have been verified in the reporter's record, clearly reveal that Knox is not the biological father of the child and any type of continued relationship with Knox is not in the child's best interests. Thus, I would hold that the trial court erred in applying the doctrine of equitable estoppel against Stamper and precluding her from denying that Knox is the biological father of the child. The doctrine simply does not apply here. *See In re Shockley,* 123 S.W.3d at 651–52.

Accordingly, I would sustain Stamper's second issue. I would further vacate the trial court's June 14, 2006 order, reverse

that portion of the divorce decree appointing Knox as Joint Managing Conservator of Stamper's daughter, and decree that Knox is not the father of the child and no parent-child relationship exists between Knox and the child.