**Opinion filed May 23, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00233-CV

_____

## IN THE INTEREST OF K.B.H., A CHILD

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-128,986**

### M E M O R A N D U M   O P I N I O N

K.B.H. was born on February 23, 2006, during Courtney Shawn Harvel's marriage to Donnie Harvel. DNA testing on May 5, 2009, confirmed that Tadd C. Sprayberry was K.B.H.'s biological father. Sprayberry filed suit to adjudicate K.B.H.'s parentage in February 2010, less than three weeks before the statute of limitations expired. *See* TEX. FAM. CODE ANN. § 160.607 (West Supp. 2012). The trial court held that Sprayberry was equitably estopped from seeking that relief and that such relief was not in K.B.H.'s best interest. We affirm.

Courtney married Donnie in 1999. K.B.H. was born in 2006 during that marriage. Donnie believed that K.B.H. was his biological child. Courtney was unsure because she and Sprayberry had had an intimate affair prior to K.B.H.'s birth. The affair began in 2002 and continued after K.B.H.'s birth. Sprayberry acknowledged that Courtney and he had unprotected sex months before K.B.H.'s birth.

Sprayberry suspected that he might be K.B.H.'s father. Courtney claimed that Sprayberry told her that he knew the time, date, and moment of conception. Sprayberry had suspected Courtney was not on any birth control regimen when they had their affair, and according to Courtney, Sprayberry said he knew in his heart that he was K.B.H.'s father.

Sprayberry never revealed anything to Donnie about his suspicions concerning K.B.H.'s paternity and never told Donnie about his affair with Courtney. Courtney also kept the affair hidden from her husband, who did not know about the affair or Sprayberry's parentage. Sprayberry secured DNA testing and confirmed his parentage on May 5, 2009. Sprayberry testified that he decided to obtain the testing when he learned of the Harvels' separation.

The Harvels' separation arose when Courtney told Donnie about her affair with Sprayberry. At this time, Sprayberry and Courtney began dating openly. The Harvels briefly attempted to reconcile, but at the time of trial, intended to divorce. Courtney and Sprayberry had also ended their affair, and Courtney has maintained that she does not want Sprayberry involved with K.B.H., in part, because of his multiple affairs.

Sprayberry filed suit and asked the court to declare that he was K.B.H.'s father. Sprayberry admitted that he had not had frequent contact with K.B.H. and always visited her with Courtney present. Sprayberry also admitted that K.B.H. had never spent the night at his house and that he was not aware of her

2

extracurricular activities, and he conceded that the Harvels had been the daily caregivers to K.B.H. for several years. Courtney testified that Sprayberry had not seen K.B.H. much, had not sent presents or gifts, and had not called recently. She also said that, after 2009, he had not seen K.B.H. at Christmas. Sprayberry admitted that the last Christmas he saw K.B.H. was in 2009.

Sprayberry testified that he had opened a savings account for K.B.H. in 2009, although Courtney said it was established in 2006. Sprayberry acknowledged that the Harvels had provided almost all of K.B.H.'s support for the past several years. Sprayberry acknowledged that K.B.H. had formed a close bond with Donnie, who was involved with her on a daily basis, and that she thought of him as her father. Courtney called Donnie an ideal father. Courtney said the disclosure would cause K.B.H. to be confused. Sprayberry conceded that K.B.H. was well-adjusted living with the Harvels and agreed with Donnie that the disclosure of her true parentage would likely cause her trauma. Sprayberry confirmed that he only wanted what was best for K.B.H.

The trial court held that Sprayberry was equitably estopped from asserting his parentage claims and that to adjudicate him as her father would not be in her best interest. The trial court issued findings of fact and conclusions of law, and Sprayberry challenges the following:

Findings of Fact:

12. Tadd Sprayberry knew that there was a distinct possibility that he might be the father of the child, [K.B.H.], from the time that Courtney Harvel became pregnant.

20. Tadd Sprayberry has never financially supported the child, [K.B.H.], and has never acted as the father of the child.

Conclusions of Law:

3. Tadd Sprayberry is equitably estopped from claiming the parentage of the child, [K.B.H.], from seeking an adjudication that he is the father of the child and from denying the parentage of Donnie Harvel of the child, [K.B.H.].

4. It is in the best interest of the child, [K.B.H.], to deny adjudication of Tadd Sprayberry as the father of the child, [K.B.H.].

5. Tadd Sprayberry is therefore not adjudicated as the father of the child, [K.B.H.], born on February 23, 2006 to Courtney Shawn Harvel.

Sprayberry challenges the trial court's judgment and the above-quoted findings of fact and conclusions of law and asserts that the trial court's denial of his petition was based on factually and legally insufficient evidence. He also asserts that neither the trial court's equitable estoppel finding nor its best interest finding was supported by the evidence.

Equitable estoppel is a doctrine in equity and is based on fair dealing, good faith, and justice. *In re Shockley*, 123 S.W.3d 642, 653 (Tex. App.—El Paso 2003, no pet.). In cases like this one, estoppel is based on the public policy that children should be secure in knowing who their parents are. *Hausman v. Hausman*, 199 S.W.3d 38, 42 (Tex. App.—San Antonio 2006, no pet.) (citing *In re Shockley,* 123 S.W.3d at 651–53). A trial court's decision in a paternity action or action modifying the parent-child relationship in equity is reviewed for abuse of discretion. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). We also review the trial court's decision as to the best interest of the child under an abuse of discretion standard. *Id.* Legal and factual insufficiency issues are not independent grounds of error under an abuse of discretion standard but,

rather, are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 542 (citing *In re T.J.L.*, 97 S.W.3d 257, 266 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

We apply a hybrid analysis because sufficiency of the evidence and abuse of discretion standards of review often overlap in family law cases. *Id.* (citing *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Within this overarching standard, we engage in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).

There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Stamper*, 254 S.W.3d at 542 (citing *In re T.J.L.*, 97 S.W.3d at 266). We defer to the trial court when it assesses the veracity and credibility of witnesses, and we do not substitute our judgment for that of the factfinder when evidence is conflicting. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). For purely legal issues, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Sprayberry challenged parts of both the court's findings of fact and conclusions of law, which he claims were based on factually and legally insufficient evidence. He specifically challenges the court's decision regarding equitable estoppel and K.B.H.'s best interest. We address the estoppel issue first and then the best interest issue.

Sprayberry complains that the trial court did not have factually and legally sufficient evidence to equitably estop him from seeking parentage of K.B.H. We disagree. The equitable power of a court is not bound by cast-iron rules but exists to do fairness; it is flexible and adaptable to particular exigencies so that relief will

5

be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other. *Hausman*, 199 S.W.3d at 42 (citing *Johnson v. Cherry*, 726 S.W.2d 4, 8 (Tex. 1987), and *Warren v. Osborne*, 154 S.W.2d 944, 946 (Tex. Civ. App.—Texarkana 1941, writ ref'd w.o.m.)).

The theory is that a person who by speech or conduct induces another to act in a particular manner should not be permitted to adopt an inconsistent position, attitude, or course of conduct. *In re Shockley*, 123 S.W.3d at 653. Each case must be determined upon its own facts. *Id.* (citing *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838 (Tex. 1968)). Equitable estoppel may arise if five factors are satisfied: (1) there was a false representation or a concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) to a party without knowledge, or the means of knowledge, of those facts; (4) with the intention that it be acted upon; and (5) the party to whom it was made must have relied on the misrepresentation to his prejudice. *Id.* (citing *In re Moragas*, 972 S.W.2d 86, 89–90 (Tex. App.—Texarkana 1998, no pet.)).

The application of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child." *In re Shockley*, 123 S.W.3d at 651-52. Courtney claimed that Sprayberry told her that he knew the time, date, and moment of conception. Sprayberry had suspected Courtney was not on any birth control regimen when they had their affair, and according to Courtney, Sprayberry said he knew in his heart that he was K.B.H.'s father.

Sprayberry conceded that he concealed his suspicions about K.B.H.'s paternity from Donnie. Courtney also hid from Donnie the possibility that Sprayberry was K.B.H.'s father. She and Sprayberry both knew that they could have conceived K.B.H. during their affair, but did nothing to alert anyone.

Sprayberry and Courtney surreptitiously continued their affair after K.B.H.'s birth, and they openly dated when the Harvels later separated. Only when it was clear that the Harvels were separated and might divorce, did Sprayberry seek testing and challenge K.B.H.'s paternity.

Donnie relied on the representation from his wife that he was K.B.H.'s father and, in reliance, began caring for and raising her. He has spent time and treasure in rearing K.B.H., and she has bonded with him. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father she has known all her life is not in fact her father. Courts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship. *Hausman*, 199 S.W.3d at 42 (citing *In re Shockley*, 123 S.W.3d at 651–53). Sprayberry acknowledged that K.B.H. had formed a close bond with Donnie, who was involved with her on a daily basis, and that K.B.H. thought of Donnie as her father. Courtney called Donnie an ideal father. Courtney said the disclosure would cause K.B.H. to be confused. Sprayberry conceded that K.B.H. was well-adjusted and that he only wanted what was best for K.B.H. The trial court did not err when it ruled that Sprayberry, under these facts, was equitably estopped from asserting his paternity to K.B.H.

Appellant next claims that the trial court did not rule in K.B.H.'s best interest. Best interest of the child is the paramount concern in the application of equitable estoppel. *Hausman*, 199 S.W.3d at 42 (citing *In re Shockley*, 123 S.W.3d at 651–53). Section 160.608 of the Texas Family Code provides in relevant part:

> (a) In a proceeding to adjudicate parentage, a court may deny a motion for an order for the genetic testing of the mother, the child, and the presumed father if the court determines that:

(1) the conduct of the mother or the presumed father estops that party from denying parentage; and

(2) it would be inequitable to disprove the father-child relationship between the child and the presumed father.

(b) In determining whether to deny a motion for an order for genetic testing under this section, the court shall consider the best interest of the child, including the following factors:

(1) the length of time between the date of the proceeding to adjudicate parentage and the date the presumed father was placed on notice that he might not be the genetic father;

(2) the length of time during which the presumed father has assumed the role of father of the child;

(3) the facts surrounding the presumed father's discovery of his possible nonpaternity;

(4) the nature of the relationship between the child and the presumed father;

(5) the age of the child;

(6) any harm that may result to the child if presumed paternity is successfully disproved;

(7) the nature of the relationship between the child and the alleged father;

(8) the extent to which the passage of time reduces the chances of establishing the paternity of another man and a child support obligation in favor of the child; and

(9) other factors that may affect the equities arising from the disruption of the father-child relationship

between the child and the presumed father or the chance of other harm to the child.

TEX. FAM. CODE ANN. § 160.608 (West Supp. 2012). Although Sprayberry had already conducted DNA testing prior to filing suit, which makes the issue of conducting testing moot, the factors in Section 160.608 are helpful in reviewing the trial court's decision on the best interest of the child. Because the best interest of the child does not require proof of a specific set of facts, courts also refer to the non-exhaustive list of factors outlined under *Holley* in any analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include the following:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley*, 544 S.W.2d at 372 (internal quotations omitted). In resolving issues that surround K.B.H.'s needs, well-being, and placement and the acts of her parents, the trial court found that K.B.H. had bonded with Donnie and that both of them had developed a close, strong, and loving parent-child relationship. Donnie had provided K.B.H.'s daily care and support during her entire young life. He was always there changing her diapers, feeding her, bathing her, taking her to and from day care, playing with her, spending time with her, and raising her as his child. In turn, she loved and adored him as her father.

In contrast, Sprayberry admitted that he had not spent any significant time with K.B.H. and had not provided any care or support for her. Sprayberry did not know what K.B.H.'s extracurricular activities were. K.B.H. had never spent the night with Sprayberry, and he had never seen K.B.H. except in Courtney's presence. Sprayberry acknowledged that the disclosure of his parentage to K.B.H. would be traumatic to her. Sprayberry further conceded that he carried on a secret affair with Courtney and that, although he thought he might be the father, he never did anything to challenge paternity until the Harvels separated. Finally, Sprayberry admitted that K.B.H. was well-adjusted with Donnie as her father and parent.

Although Sprayberry is K.B.H.'s biological father, the mere biological link with K.B.H. does not merit equivalent constitutional protection to that of a father who has "a developed parent-child relationship." *See In re R.J.*, 381 S.W.3d 619, 625 (Tex. App.—San Antonio 2012, no pet.) (citing *Lehr v. Robertson*, 463 U.S. 248, 261 (1983)); *see also In re J.W.T.*, 872 S.W.2d 189, 198 (Tex. 1994). The trial court in this case heard the conflicting testimony and resolved disputed factual issues in Donnie's favor. The trial court did not err when it held that it was in K.B.H.'s best interest to estop Sprayberry from seeking a parentage determination. We need not consider the other arguments advanced by Sprayberry, and his sole issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


May 23, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.