Opinion issued August 29, 2013



In The

# Court of Appeals

For The

# First District of Texas

—————————————————

## NO. 01-11-00128-CV

—————————————————

## LARISA JACKSON, Appellant

## V.

## VAGRAM SARADJIAN, Appellee

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-11459**

---

## MEMORANDUM OPINION ON REHEARING

We grant Larisa Jackson's motion for rehearing and withdraw our June 21, 2012 opinion, vacate our judgment, and issue this opinion and the related judgment in their stead.

This is an appeal from the granting of a final decree of divorce. For the reasons set forth below, we modify the trial court's March 4, 2011 judgment and, as modified, we affirm.

## Background

After a trial presided over by the trial judge, the Honorable Annette Kuntz, on November 22, 2010 the associate judge, the Honorable Roy Moore, signed a final decree of divorce. The decree was approved as to form by the lawyers for both appellant Larisa Jackson and appellee Vagram Saradjian. At the time he signed the decree, Judge Moore had been elected as judge of the 245th District Court of Harris County, but his term as a district judge did not begin until January 1, 2011. On December 10, 2010, Jackson requested findings of fact and conclusions of law, which District Court Judge Moore signed on January 13, 2011.

On January 3, 2011, Jackson filed a motion to declare the November 22, 2010 divorce decree void because an associate judge has no authority to render a final decree. Jackson in her motion stated that the "order should be set aside as void and a new trial should be granted." On February 21, 2011, Judge Moore, at that time the district judge, ruled on the motion and held that the November 22, 2010 decree was a final decree and the court had lost plenary power thirty days after it was signed, i.e., December 22, 2010. Judge Moore held that the court had no jurisdiction to consider the January 3, 2011 motion, but he also held that a

2

judgment nunc pro tunc should be signed in the interest of justice. On March 4, 2011, Judge Moore signed a "Final Decree of Divorce Nunc Pro Tunc." No postjudgment motions challenging the merits of either the November 22, 2010 or March 4, 2011 decrees were filed.

Jackson brings five issues on appeal. The first three issues assail the November 22, 2010 decree: (1) whether an associate judge has the authority to sign a final divorce decree; (2) whether the trial court erred in not declaring the November 22, 2010 decree void; and (3) whether the trial court erred in rendering judgment nunc pro tunc. In the remaining two issues, Jackson contends (1) a new trial is necessary because of alleged variances between the oral rendition at trial and the written decree and because of other alleged errors and (2) the trial court erred in awarding $300,000 in missing funds to Jackson as a part of the division of the community estate.

## Discussion

This Court has previously held that the Family Code does not generally authorize an associate judge to render a final divorce decree. *See Robles v. Robles*, 965 S.W.2d 605, 609 n.4 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see also* TEX. FAM. CODE ANN. § 201.007 (West 2008) (listing powers of associate judge). Even in cases referred to the associate judge, Family Code section 201.013 provides, with an exception not applicable in this case, that a judgment of the

3

associate judge becomes the judgment of the referring court only on the referring court's signing the proposed judgment. TEX. FAM. CODE ANN. § 201.013(b) (West 2008). There is no referral order in this case, so the November 22, 2010 decree signed by the associate judge does not even have the standing of a section 201.013(b) proposed judgment.

Because the November 22, 2010 decree was not signed by the district judge, we hold that it has no legal effect as a judgment. As a result, the trial court did not lose plenary power on December 22, 2010, as no valid judgment had been signed. *See* TEX. R. CIV. P. 329b(d) (trial court retains plenary power over its judgment for thirty days if no proper postjudgment motion is timely filed). The trial court signed a final decree on March 4, 2011, and even though it is improperly described in its caption as a "Final Decree of Divorce Nunc Pro Tunc," it is nonetheless the trial court's final judgment. Accordingly, we sustain Jackson's first two issues and hold that the associate judge had no authority to sign a final divorce decree and the trial court erred in treating the November 22, 2010 decree as a final judgment over which the court had lost plenary power.

The first two issues, however, are moot because the trial court rendered a final decree on March 4, 2011. Jackson argues in issue three that the decree is an improper judgment nunc pro tunc. We disagree. A judgment nunc pro tunc is only proper if the trial court is correcting clerical error in its judgment and plenary

4

power over the judgment has lapsed. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). In this case, no final decree had been rendered before March 4, 2011, so the description of the March 4, 2011 decree as being rendered nunc pro tunc was error only to the extent that the decree related back in time to the November 22, 2010 decree to adjudicate any of the parties' rights and responsibilities. Accordingly, we sustain issue three only to the extent of modifying the March 4, 2011 decree to delete the words "nunc pro tunc." *See* TEX. R. APP. P. 43.2(b).

In her fourth issue, Jackson contends that a new trial is necessary because of alleged variances between the oral rendition at trial and the written decree, as well as other alleged errors. Jackson admits in her appellate brief that the problems she raises are present in both the November 22, 2010 and March 4, 2011 decrees. Jackson's lawyer approved the November 22, 2010 decree as to form, and she did not file a postjudgment motion in the trial court raising any of these alleged errors in the decree or arguing that they constitute fundamental error. Accordingly, we hold that she has not preserved her complaints for appellate review. *See* TEX. R. APP. P. 33.1(a)(1) (requiring preservation of error). We overrule Jackson's fourth issue.

In her fifth issue, Jackson claims the trial court erred in awarding $300,000 in missing funds to Jackson as a part of the division of the community estate, because there is no evidence to support the award.

In family law cases, we review the trial court's division of property for an abuse of discretion. *Grayson v. Grayson*, 103 S.W.3d 559, 561 (Tex. App.—San Antonio 2003, no pet.); *see also Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998) (recognizing trial court is afforded wide discretion in dividing marital estate). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The trial court does not abuse its discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id.*

We consider favorable evidence if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 542. With regard to whether the trial court abused its discretion, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* The trial court, as fact finder, is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trial court may believe one witness, disbelieve others, and resolve inconsistencies in a witness's testimony. *Id.* at 697.

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due

6

regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2006). It is the responsibility of the parties to the suit to produce evidence of the value of various properties to provide the trial judge with a basis on which to divide them. *Wallace v. Wallace*, 623 S.W.2d 723, 725 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd). The party complaining of the trial court's division of the property must demonstrate that the division is so unjust and unfair as to constitute an abuse of discretion. *Id.*

The trial court found that Jackson withdrew $300,000 from the marital estate and failed to account for it. The trial court awarded Jackson the missing $300,000. To offset this award, it assessed approximately $100,000 in credit card debt against her. It also awarded Saradjian his retirement account, valued at approximately $100,000.

The trial court heard some testimony that Jackson withdrew at least $300,000 from the marital estate, and that she failed to account for it at the time of the divorce. Jackson conceded that she withdrew $209,0000 from a joint account and put it in her individual bank account. She testified that the money was later transferred to an investment account in her name. However, she testified that Saradjian was in charge of the investment account and that she no longer knew where the money was and had none of it left. On the other hand, Saradjian testified that once Jackson had taken the money, he never had access to Jackson's

7

investment account or individual bank account. He never received any part of the $209,000, and he believed that Jackson still had it.

Jackson also testified that she removed Saradjian as an authorized user on a bank account that she held in the name of Schlern International Music Festival. She testified that after removing his name, she withdrew about $70,000 in cash from the account in $9,500 increments. She testified that she gave most of the money to Saradjian. However, Saradjian testified that he never received this money. The cash was not accounted for at trial.

Saradjian also testified that Jackson had obtained credit cards in his name without his knowledge. He testified that Jackson charged more than $70,000 on these cards without his knowledge after Saradjian and Jackson had separated. He testified that he had no access to those credit cards, and did not receive any benefits from those charges. Jackson testified that she used the credit cards to invest with her Ameritrade account and to pay for living expenses for her and Saradjian.

Because the trial court heard conflicting evidence about whether Jackson had withdrawn at least $300,000 from the marital estate, it was free to weigh the credibility of the witnesses and determine that Jackson had failed to account for some or all of this money in connection with the marital estate. *Kuhlmann*, 722 S.W.2d at 696–97. Hence, the evidence is legally and factually sufficient to

8

support the trial court's division of the marital estate.  *See Stamper*, 254 S.W.3d at 542; *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989).

## Conclusion

We modify the trial court's March 4, 2011 final decree to delete the words "Nunc Pro Tunc" from the caption "Final Decree of Divorce Nunc Pro Tunc."  As so modified, we affirm.  *See* TEX. R. APP. P. 43.2(b).

Jim Sharp
Justice

Panel consists of Justices Keyes, Bland, and Sharp.