**Opinion issued February 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00089-CV

———————————

**JERREL DEAN HANCOCK, Appellant**

**V.**

**PEGGY LYNN HANCOCK, Appellee**

———————————

**On Appeal from the County Court at Law No. Two**
**Galveston County, Texas**
**Trial Court Case No. 12FD3236**

———————————

## MEMORANDUM OPINION

Jerrel Dean ("J.D.") and Peggy Lynn Hancock each sought a divorce from the other. The trial court granted the divorce decree and awarded Peggy spousal maintenance in the amount of $3,300 per month for three years. J.D. brings this appeal to challenge the award of spousal maintenance, arguing that there was no

evidence that Peggy lacked the ability to support herself or to rebut the presumption that spousal maintenance is not warranted.

We find the evidence to be sufficient to support the judgment, and accordingly we affirm.

## Background

Peggy and J.D. were married in 1974, when she was 19 years old and he was 20. Together they had two children, who were adults at the time of trial.

Both Peggy and J.D. worked throughout most of their marriage. Peggy worked as a licensed vocational nurse providing patient care until the early 1990s. Later she worked as a nurse consultant and in specialized medical billing roles. Peggy testified that she stopped working in 2009 at J.D.'s request and became a "professional grandmother."

J.D. worked in the oil and gas industry, and in March 2009 he accepted early retirement incentives offered by his former employer. At that time he was 55 years old and a supervisor for turnarounds. After "retiring," however, J.D. continued to work as a contractor in the oil and gas industry. Although his work was part-time, he earned more than $200,000 per year in 2010, 2011, and 2012.

From April through September 2012, J.D. worked in Wyoming, where he began a relationship with another woman. When he returned to Texas in September to attend his son's wedding, he asked Peggy for a divorce and confessed his

2

extramarital affair. Although Peggy contemplated reconciliation, J.D. was not interested in reconciling, and he soon began living with his paramour.

Peggy filed a petition for divorce, in which she sought spousal maintenance. J.D. responded with a counterpetition. Both spouses alleged insupportability and adultery.

At trial, Peggy testified about the ways in which she suffered emotionally from the separation and divorce. She sought help from a professional counselor, who testified at trial that Peggy was initially "very distraught, very upset" when J.D. asked for a divorce, and she was overwhelmed and unable "to do a lot of things."

Peggy's emotional state and other concerns impeded her ability to seek employment. She testified about a litany of health problems that caused her to suffer chronic pain and made working difficult. She had been overweight most of her adult life and had undergone three surgeries related to gastric banding and related complications. In January 2013, she had breast-reduction surgery to address chronic back and neck pain and a body lift due to weight loss. In June and July 2013, she underwent carpal-tunnel surgery in both hands, but she continued to experience pain from bone spurs in her thumbs. In addition, surgery to repair a torn meniscus in her left knee was scheduled to occur approximately one month after trial.

Although Peggy testified to significant pain reduction as a result of both the breast-reduction and carpal-tunnel surgeries, she still found it necessary to wear splints on both wrists to reduce pain. It was also difficult for her to lift things, such that lifting a patient's chart would be challenging. When asked about jobs that did not involve direct patient care, Peggy said that she could not return to medical billing or consulting because the jobs in that field had largely become obsolete. Moreover, writing or typing for more than short periods of time was painful.

In addition to her current health problems, Peggy testified about her medical history, which included a total replacement of her right knee, colon cancer, asthma, arthritis in her hands and knees, basal-cell skin cancer, irritable bowel syndrome, and urinary incontinence. She said that working a 12-hour shift at a nursing home would be "very, very hard" on her right knee.

While the divorce was pending, Peggy applied for jobs at numerous hospitals in the Houston area. Several informed her that they hired only registered nurses (RNs), not licensed vocational nurses (LVNs). She testified that most LVN jobs are now in nursing homes, where the LVNs are expected to turn people, assist with bathing, and perform other hands-on tasks that involve lifting people. She testified that she sought employment at several nursing homes, but she did so soon after her carpal-tunnel surgeries. She was not a successful candidate, however, because her recovery would take six months.

Though Peggy last worked with patients 13 years earlier, she testified that she knew she would have to work again and that the breast-reduction surgery was an attempt to alleviate her daily back and neck pain so she could work. This surgery made a significant difference, and Peggy believed that "down the road" it would "help immensely" in her ability to work. Similarly, though she had testified that her carpal-tunnel syndrome was painful and worsened with activity, she also reported that the pain was "virtually gone" after the surgeries.

The Hancocks maintained joint checking and savings accounts throughout most of their marriage, but J.D. stopped making deposits into the accounts in February 2013. Peggy obtained an agreed order for temporary spousal support in the amount of $3,665 per month beginning in April 2013.

Peggy sought spousal maintenance in the divorce. She estimated her total monthly expenses at $5,000, including the cost of health insurance, a benefit that she would lose as a result of the divorce. She anticipated that she could earn between $17 and $21 per hour as an LVN in a nursing home. Nevertheless, without regard to her health problems and the gap in her work history, she anticipated that she could not earn enough money to cover her minimum reasonable expenses. Moreover, she had no retirement savings apart from J.D.'s 401(k) retirement account, and she was not eligible for Social Security.

In light of her age, health, experience, work history, and the obsolescence of jobs in her field, Peggy testified that she did not have the ability to provide for her minimum needs. She testified that without an award of spousal maintenance she would have to use retirement funds to pay for her expenses, and because of her age, she would incur penalties and taxes on those withdrawals. At the close of her testimony and in response to a question from the court, Peggy testified that it would take her at least two years to become an RN because none of her LVN training or experience would be transferable to an RN training program. She said: "I would literally have to start all over again as a layperson . . . and go . . . for an associate's." In his closing statement, Peggy's trial attorney specifically disclaimed any reliance on the statutory provision allowing an award of spousal maintenance because of a disability, *see* TEX. FAM. CODE § 8.051(2)(A), and said, "We're going under the one that they've been married for ten years, and she lacks the ability to earn sufficient income." *See id*. § 8.051(2)(B).

The trial court granted the divorce on the grounds of insupportability and adultery committed by J.D. Peggy was awarded the marital home, which the trial court found was worth $109,000, and she was assigned the mortgage on the house, which had a balance of approximately $73,000. Peggy was also awarded 60% of the retirement accounts valued at approximately $760,000, two vehicles, six bank accounts worth approximately $5,000 in total, and other debt totaling

6

approximately $25,000. J.D. was awarded tools and guns, two vehicles, one bank account worth approximately $13,000, debts totaling approximately $61,000, and 40% of the retirement accounts. Neither party claimed any separate property. In addition, the court ordered that J.D. pay monthly spousal maintenance in the amount of $3,300 for 36 months.

In its findings of fact and conclusions of law, the trial court found that J.D. had earned a total of $850,435 since his 2009 retirement from his former employer and that he is capable of earning substantially the same income for the next several years. The court found that Peggy suffered from chronic pain, was unable to type, write, or administer injections, and could not work 12-hour shifts required for LVNs, whose work involves lifting, pulling, and tugging. The findings further stated that Peggy had not worked directly with patients in more than 13 years and that her special billing work had become obsolete. The court found that Peggy could be trained as a registered nurse or for other employment in three years, but at that time she had not received any additional education or training for employment. Peggy's reasonable monthly expenses were determined to be $5,000, including $750 to $1,000 for medical insurance she would need to obtain when she is no longer covered by J.D.'s insurance policy. Finally, the court found that Peggy currently lacks the ability to earn sufficient income to provide for her minimum

reasonable needs, and in light of that and her lack of work history and need for job training, spousal maintenance was proper.

J.D. filed a motion for new trial, which was overruled by operation of law, and he timely appealed.

**Analysis**

J.D. raises two issues on appeal. He argues that the court erred by awarding spousal maintenance because there was no evidence that Peggy lacked the ability to provide for her minimum reasonable needs or to otherwise rebut the statutory presumption that spousal maintenance is not warranted.

We review a spousal-maintenance award under an abuse of discretion standard. *See, e.g.*, *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Dunn*, 177 S.W.3d at 396. In this context, "legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion." *Dunn*, 177 S.W.3d at 396. Because of the overlap between the abuse-of-discretion and sufficiency-of-the-evidence standards of review, this court engages in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to

exercise its discretion and (2) erred in its application of that discretion. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

With regard to the question of whether the trial court had sufficient information, "[w]e apply the same standards when reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the evidence supporting a jury's answer to a special issue." *Dunn*, 177 S.W.3d at 396 (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)). To prevail on a legal-sufficiency challenge on an issue for which an opposing party had the burden of proof, the complaining party must show that there is no evidence that "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing a legal-sufficiency challenge, we consider all of the evidence supporting the judgment, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *Id.* We consider the evidence in the light most favorable to the findings and indulge every reasonable inference that would support them. *Id*. at 822.

## I. Sufficiency of property to provide for minimum reasonable needs

In his first issue, J.D. contends that in light of the assets Peggy was awarded in the divorce, she had sufficient property to provide for her minimum reasonable needs, and the award of spousal maintenance was therefore an abuse of the court's

discretion. The Family Code provides that a trial court may order spousal maintenance if the spouse seeking maintenance will lack sufficient property upon dissolution of the marriage to provide for her minimum reasonable needs and if certain other conditions are satisfied. TEX. FAM. CODE § 8.051. When the parties have been married more than 10 years, an award of spousal maintenance may be proper if the party seeking maintenance "lacks the ability to earn sufficient income to provide for . . . minimum reasonable needs." *Id.* § 8.051(2)(B).

J.D. argues that "there is no evidence that [Peggy] was in any fashion limited in her ability to support herself or in need for continuing maintenance," because she is a licensed vocational nurse and she received assets in the property division valued at over a half-million dollars. He argues that no evidence was presented to identify the nature and extent of her current earning capacity, and the lack of such evidence should be held against her because she had the burden of proof on this issue. In making this argument, J.D. argues that "assets from the dissolution of the marriage [must] be factored in making a determination of the need for support."

Peggy presented evidence in the form of her testimony and several exhibits showing that her minimum reasonable needs were $5,000 per month, and the trial court found this to be true. J.D. does not challenge that finding on appeal. Peggy also testified that without regard to her physical and mental condition, she would be able to earn approximately $17 to $21 per hour as an LVN, an amount which

10

would be insufficient to provide for her minimum reasonable needs. She also introduced evidence showing that she was unable to obtain work in a hospital because she was not a registered nurse, and that her health concerns made it impossible for her to work as an LVN in a nursing home due to the rigorous physical demands of the job. She also testified that the work she did involving medical billing and nurse consulting was no longer available as these jobs had become obsolete. This was some evidence the factfinder could have relied upon to determine that Peggy was limited in her ability to earn income. *See City of Keller*, 168 S.W.3d at 827.

We also must consider the property that Peggy was awarded in the dissolution of the marriage. J.D. argues that the award "in excess of a half a million dollars in assets" precludes an award of spousal maintenance. Peggy was awarded the house, which had a value of $109,000 burdened by a mortgage debt of approximately $73,000, giving her equity in the home valued at approximately $36,000. She was also awarded approximately $5,000 on deposit in various bank accounts and ordered to pay nearly $25,000 in debts. In addition, she was awarded approximately $456,000 in retirement accounts, which she testified would be taxable and incur a penalty upon early withdrawal.

"When considering whether the spouse seeking spousal maintenance will have sufficient property after the divorce to provide for her minimum reasonable

11

needs, the trial court may consider the liquidity of the assets awarded to her and their ability to produce income." *Everitt v. Everitt*, No. 01-11-00031-CV, 2012 WL 3776343, at \*8 (Tex. App.—Houston [1st Dist.] Aug. 31, 2012, no pet.) (mem. op.); *see also In re McFarland*, 176 S.W.3d 650, 659 (Tex. App.—Texarkana 2005, no pet.). "In considering assets awarded in the divorce, the law does not require a spouse to spend down long-term assets, liquidate all available assets, or incur new debt simply to obtain job skills and meet needs in the short term." *Dunaway v. Dunaway*, No. 14–06–01042–CV, 2007 WL 3342020, at \*3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.) (mem. op.).

The evidence shows that Peggy would have exhausted her liquid assets in the first month in order to meet her minimum reasonable needs, leaving her without liquid assets to pay the debts assigned to her in the divorce decree. The trial court was not required to consider the illiquid retirement savings in finding that Peggy lacked the ability to meet her minimum reasonable needs. Considering the evidence in the light most favorable to the trial court's ruling, we conclude that there was some evidence that would enable a reasonable factfinder to determine that Peggy lacked the ability to earn sufficient income to provide for her minimum reasonable needs. *See* TEX. FAM. CODE § 8.051; *City of Keller*, 168 S.W.3d at 827. We hold that the trial court did not abuse its discretion in this regard, and we overrule J.D.'s first issue.

## II. Presumption against spousal maintenance

In his second issue, J.D. argues that the trial court abused its discretion in awarding spousal maintenance because there was no evidence to rebut the statutory presumption that maintenance was not warranted. In particular, J.D. argues that there was "absolutely no evidence presented of any effort on the part of the moving party to seek employment or training leading to an income while this lawsuit was pending."

A spouse who demonstrates that she lacks the ability to earn sufficient income to provide for her minimum reasonable needs must also overcome a rebuttable presumption that spousal maintenance is not warranted by showing that she has exercised diligence in "earning sufficient income to provide for the spouse's minimum reasonable needs" or "developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending." TEX. FAM. CODE § 8.053; *see also Cooper v. Cooper*, 176 S.W.3d 62, 64 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

The trial court filed findings of fact and conclusions of law, including a finding that Peggy "has not received additional education or training for employment." Although the court did not expressly find that Peggy had exercised diligence in earning sufficient income to provide for her minimum reasonable

13

needs or in developing the necessary skills to provide for her needs during the pendency of the divorce, *see* TEX. FAM. CODE § 8.053, we may infer that the court found that to be true, consistent with its judgment. *See Hailey v. Hailey*, 176 S.W.3d 374, 383–84 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (when findings of fact address a ground of recovery but fail to include an essential element, court of appeals may infer the omitted element) (citing TEX. R. CIV. P. 299). Thus, we consider whether any evidence supports the trial court's implied finding that Peggy exercised diligence in earning sufficient income or developing the skills necessary to do so while the divorce was pending.

Peggy testified that she had applied for jobs during the pendency of the divorce, but her options were limited due to her health issues, and she was not hired because the job market for LVNs or specialized medical-billing nurse consultants had shrunk. No controverting evidence was introduced on this fact issue. The trial court as factfinder was entitled to believe Peggy's testimony. *See City of Keller*, 168 S.W.3d at 819 (factfinder determines credibility of witnesses).

In addition, Peggy testified that the combined effect of numerous health problems had made it difficult for her to work but that she had begun to address these issues during the pendency of the lawsuit. In particular, she testified to having suffered chronic and severe back and neck pain which had limited her activity but which was greatly alleviated by breast-reduction surgery. She also

14

testified to experiencing chronic pain from carpal-tunnel syndrome in both wrists which also was relieved by surgery during the pendency of the lawsuit. These facts were not controverted at trial, and the court was likewise entitled to rely on them as some evidence of her diligence in obtaining necessary skills—i.e., the physical ability to work—to provide for her minimum reasonable needs.

Considering the evidence in the light most favorable to the trial court's ruling, we conclude that there was some evidence that would enable a reasonable factfinder to determine that Peggy exercised diligence and rebutted the statutory presumption against spousal maintenance. *See* TEX. FAM. CODE § 8.053; *City of Keller*, 168 S.W.3d at 827. We hold that the trial court did not abuse its discretion in this regard, and we overrule J.D.'s second issue.

**Conclusion**

We affirm the trial court's decree.

Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

15